# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**FREEDOM TRANSPORTATION, INC.,**

    **Plaintiff,**

    **v.**

**NAVISTAR INTERNATIONAL
CORPORATION, ET AL.,**

    **Defendants.**

**Case No. 2:18-CV-02602-JAR-KGG**

## MEMORANDUM AND ORDER

Plaintiff Freedom Transportation, Inc. brings this action alleging a variety of claims against Defendants Navistar International Corporation and Navistar, Inc. ("Navistar Defendants"), Allstate Fleet and Equipment Sales of Houston, Inc. ("Allstate"), and Penske Truck Leasing Co., L.P., Penske Truck Leasing Corporation, and Penske Logistics LLC ("Penske Defendants") relating to Plaintiff's purchase of six allegedly defective box trucks for commercial use.

Plaintiff brings claims against the Navistar Defendants for breach of implied warranty of merchantability (Count I), fraudulent concealment (Count II), fraud in the inducement (Count III), negligence (Count IV), and consumer fraud and deceptive trade practices, including violations of the Illinois Consumer Fraud and Deceptive Trade Practices Act (Count V). Plaintiff's claims against Allstate include breach of contract (Count VI), breach of express warranty (Count VII), breach of implied warranty of merchantability (Count VIII), fraudulent concealment (Count IX), fraud in the inducement (Count X), negligent misrepresentation (Count XI), negligence (Count XII), deceptive trade practices, including violations of the Texas Deceptive Trade Practices-Consumer Protection Act (Count XIII), and unjust enrichment (Count

XIV). Finally, Plaintiff brings claims against the Penske Defendants for fraudulent concealment (Count XV), fraud in the inducement (Count XVI), and negligence (Count XVII).

This matter comes before the Court on the Navistar Defendants' Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2) (Doc. 13), Allstate's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2), Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to Fed. R. Civ. P. 12(b)(6) and Motion to Dismiss Pursuant to Fed. R. Civ. P. 9(b) (Doc. 28), and the Penske Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (Doc. 24). The motions are fully briefed, and the Court is prepared to rule.

For the reasons explained below, the Court denies the Navistar Defendants' motion to dismiss for lack of personal jurisdiction. The Court denies Allstate's motion to dismiss for lack of personal jurisdiction. The Court grants in part Allstate's Rule 12(b)(6) motion to dismiss for failure to state a claim. Allstate's Rule 12(b)(6) motion is granted only as to Counts IX, X and XIII for failure to plead fraud with the particularity required by Rule 9(b), and Plaintiff is granted leave to amend Counts IX, X and XIII. The Court also grants in part the Penske Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim. The Penske Defendants' motion is granted only as to Counts XV and XVI for failure to sufficiently plead fraud under Rule 9(b), without prejudice; Plaintiff may follow the procedure for seeking leave to amend under D. Kan. Rule 15.1.

## I.      Legal Standard for Motions to Dismiss for Failure to State a Claim

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative

level"[1] and must include "enough facts to state a claim for relief that is plausible on its face."[2] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[3] The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[4] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[5] Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[6]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[7] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[8] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[9] "A claim has facial plausibility when the plaintiff pleads factual content

---

[1]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004)).

[2]*Id*. at 570.

[3]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[4]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[5]*Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[6]*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[7]*Id*. (quoting *Twombly*, 550 U.S. at 555).

[8]*Id*. at 678–679.

[9]*Id*. at 679.

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]

### *Facts Drawn from the Complaint*

Based on the above standards, the underlying facts are as follows. Plaintiff is a shipping and logistics company owned by Daniel and Natasha Shirey and based in Olathe, Kansas. The Navistar Defendants are incorporated in Delaware and have their principal place of business in Lisle, Illinois. The Navistar Defendants are registered to do business in Kansas and have a registered agent for service of process in Kansas. Allstate is incorporated in and has its principal place of business in Texas. Penske Truck Leasing Co., L.P. is a Delaware partnership; Penske Truck Leasing Corporation is a Delaware corporation; and Penske Logistics LLC is a Delaware limited liability company. The Penske Defendants' principal place of business is in Pennsylvania; they are registered to do business and have an agent for service of process in Kansas.

In November 2016, Plaintiff purchased six International DuraStar 4300 trucks in order to meet the needs and specifications of a contract requiring Plaintiff to perform shipping and logistics services. The trucks had been manufactured by Defendant Navistar, Inc. Plaintiff purchased the trucks from Defendant Allstate; Defendant Allstate had purchased the trucks from the Penske Defendants.

Plaintiff communicated from Kansas with Allstate representatives numerous times during November 2016. Plaintiff told Allstate that it needed six box trucks with certain specifications for a shipping contract and that it needed the trucks to be reliable. Allstate identified the six

---

[10]*Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

trucks it was offering as 2010 and 2011 International DuraStar 4300s, manufactured by Navistar, Inc.

On or around November 29, 2016, Defendant Allstate emailed to Plaintiff in Kansas a "Vehicle Buyer's Order" offering to sell the trucks for $25,500 each with instructions for Plaintiff to sign and return the order form. On or about November 29, 2016, Plaintiff signed and returned the order form to Defendant Allstate, accepting the offer and agreeing to pay the total price. Plaintiff picked up the trucks from various Penske locations and drove the trucks to Plaintiff's headquarters in Kansas.

The six trucks Plaintiff purchased in November 2016 turned out to be defective and failed well before their intended and expected useful life, causing Plaintiff lost revenue, business opportunities and other damages. Within weeks of picking up the trucks, the trucks began experiencing breakdowns, ERG emission system failures, and engine failures.

These International DuraStar 4300 trucks were manufactured by Navistar, Inc. in 2010 and 2011 and featured the MaxxForce engine, which Navistar, Inc. designed and manufactured. The MaxxForce engine has an exhaust-gas-recirculation-only ("EGR-only") emission system, which recirculates engine exhaust gas back into the engine to be re-combusted. In contrast, other commercial truck manufacturers in North America use a combination of EGR and selective catalytic reduction, which requires injecting a urea-based chemical after-treatment into the exhaust gas once it leaves the engine, thereby neutralizing and/or reducing harmful emissions.

In public statements, press releases and advertising, the Navistar Defendants touted the MaxxForce engine's unique EGR-only technology as providing superior fluid economy and represented that the engines would be certified under the EPA's 2010 emission standards. But the engines never reached the EPA's 2010 emission standards threshold necessary for

certification. Based on the data results of extensive pre-market testing that is standard in the industry, Navistar knew that the engines were never going to meet the EPA's standards using EGR-only technology. Navistar's EGR-only emission system causes widespread engine damage, repeated engine failures, and decreased fuel efficiency. One of the most significant problems with the EGR-only emission system is that the continuous recirculation of exhaust gas back into the engine reduces the engine's efficiency, causing it to overheat and producing excessive soot inside the engine. The Navistar Defendants knew about these problems and concealed this information from the public and from Plaintiff. By mid-2011, warranty claims for the engines were significantly increased, which the Navistar Defendants also concealed. The Navistar Defendants also failed to properly repair the EGR-only systems during and/or outside the warranty period.

By February 2012, the Navistar Defendants ran out of "banked" EPA emissions credits, which they had been using to continue to sell the MaxxForce engines. The Navistar Defendants continued to manufacture and distribute the MaxxForce-powered International DuraStar 4300 trucks while making false representations to the public and to Plaintiff regarding their performance capabilities, reliability, EPA certification, and Navistar's commitment to the MaxxForce engine that Navistar knew to be false. In July 2012, the Navistar Defendants announced that they were abandoning the EGR-only system; and beginning in March 2013, they began retiring the MaxxForce engine. By 2015, the MaxxForce engine was no longer used in International DuraStar 4300 trucks.

To induce Plaintiff to purchase the trucks, Penske knowingly falsely represented to Allstate and Allstate in turn represented to Plaintiff that the trucks were "good, reliable" trucks that had been "fleet-maintained" by Penske. "Fleet maintained" is a well-known term of art in

the shipping and logistics industry, indicating that a vehicle had received maintenance on a routine schedule to preserve the vehicle's quality and function and extend the vehicle's useful life. Allstate and Penske failed to disclose that the trucks' MaxxForce engines had defective EGR emission systems and that there was a lack of proper maintenance. As a merchant of commercial trucks, Allstate knew or should have known of the trucks' defective MaxxForce engines. None of the defendants informed Plaintiff of the defective condition of the trucks; each defendant misrepresented the quality, condition and reliability of the trucks. Had Plaintiff been told about the trucks' defective condition, including the defective EGR system and lack of proper maintenance, Plaintiff would not have purchased the trucks.

## II. Legal Standard for Motions to Dismiss Based on Lack of Personal Jurisdiction

Plaintiff bears the burden of establishing personal jurisdiction as to these Defendants.[11] In the absence of an evidentiary hearing, as in this case, the plaintiff must make only a prima facie showing of jurisdiction to defeat a motion to dismiss.[12] "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."[13] Allegations in a complaint are accepted as true if they are plausible, non-conclusory, and non-speculative, to the extent that they are not controverted by submitted affidavits.[14] When a defendant has produced evidence to support a challenge to

---

[11]*Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).

[12]*AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056–57 (10th Cir. 2008) (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998); *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)).

[13]*Id.* (quoting *OMI Holdings, Inc.*, 149 F.3d at 1091).

[14]*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007)); *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989) (citing *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987)); *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984) (citation omitted), *cert. denied*, 471 U.S. 1010 (1985).

personal jurisdiction, a plaintiff has a duty to come forward with competent proof in support of the jurisdictional allegations of the complaint.[15] The court resolves all factual disputes in favor of the plaintiff.[16] Conflicting affidavits are also resolved in the plaintiff's favor, and "the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."[17] "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"[18]

### *Additional Facts Material to Issue of Personal Jurisdiction*

Based on the above standards, in addition to the facts drawn from the Complaint, affidavits and other documents in the record establish the following facts which are material to the issue of personal jurisdiction. Based on the declarations of Daniel Shirey, Michael Caldwell, Michael Hayden (President of Defendant Allstate), and Roy Zeitlow (Navistar, Inc. manager), as well as the Motor Vehicle Bill of Sale, the following facts are either undisputed or resolved in Plaintiff's favor.

Defendant Navistar International Corporation is the parent company of Defendant Navistar, Inc., a wholly-owned subsidiary that designs, manufactures, assembles, and distributes vehicles and related products, including the six trucks at issue in this case. Neither company has ever been incorporated or had its principal place of business in Kansas. Neither company conducts manufacturing activities, owns real property, maintains offices, owns dealerships, or

---

[15]*Pytlik*, 887 F.2d at 1376 (citation omitted); *see also Shrader*, 633 F.3d at 1248 (citing *Wenz*, 55 F.3d at 1505).

[16]*Dudnikov*, 514 F.3d at 1070 (citation omitted).

[17]*Behagen*, 744 F.2d at 733 (citing *Am. Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449, 1454 n.2 (10th Cir. 1983).

[18]*OMI Holdings, Inc.* 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

offers repair or service of vehicles in Kansas.  Neither company sells directly to citizens of Kansas; but Navistar, Inc. sells its products through an exclusive network of independent dealers in Kansas and elsewhere.

Defendant Allstate acts as a broker for wholesale sale of used commercial trucks, mostly for dealer-to-dealer transactions.  Allstate has never been incorporated in Kansas and is not registered to do business in Kansas.  Allstate does not own or lease any property in the Kansas, has no office or other business address in Kansas, and does not advertise its business or services in Kansas.

When Daniel Shirey decided to purchase trucks in order to fulfill a new shipping and logistics contract, his father-in-law suggested he might be able to buy trucks on better terms than buying directly from dealers by getting help from Michael Caldwell.  Caldwell was in the business of buying and selling trucks and was a friend of Shirey's father-in-law.  Shirey called Caldwell, who resided in Ukraine, and asked for his help.  Caldwell agreed.  On or about November 1, 2016, while Caldwell was in Kansas visiting his son, he met Shirey in Olathe, Kansas.  Caldwell told Shirey that the only logical trucks for him to buy were from Penske, because Penske sold well-maintained trucks and kept complete maintenance records on the trucks it sold.  Caldwell told Shirey that Penske's trucks were good, reliable trucks that were fleet-maintained.

During the weeks following November 1 and before Shirey decided to buy the trucks, Caldwell continued to represent to Shirey that Penske's trucks were fleet-maintained, good and reliable trucks.  Before the sale was consummated, Caldwell communicated with Shirey in Kansas numerous times, by phone and email.  Caldwell contacted Defendant Allstate and asked

them to prepare the documents for Allstate to sell these trucks to Plaintiff. Allstate purchased the trucks from Penske and prepared the documents to sell the trucks to Plaintiff.

Allstate's president, Michael Hayden, emailed the vehicle purchase order to Plaintiff in Kansas. Shirey signed the purchase order in Kansas and returned it to Allstate by email. Caldwell's name is printed on the bill of sale and his electronic signature is on the bill of sale. Shirey believed that Caldwell was Allstate's representative.

The trucks were never in Allstate's possession. Plaintiff picked the trucks up from Penske in various locations. The bill of sale indicates that these locations were in Pennsylvania, Wisconsin, Illinois, and Indiana.

## III.    Motions to Dismiss for Lack of Personal Jurisdiction

The Navistar Defendants and Allstate assert that this Court lacks personal jurisdiction over them and that Plaintiff's claims against them must therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(2). Plaintiff contends that Allstate is subject to specific jurisdiction in this Court, and that the Navistar Defendants are subject to both specific and general jurisdiction.

### A.    Legal Standards for Personal Jurisdiction

Federal courts follow state law "in determining the bounds of their jurisdiction over persons."[19] However, "[a] state court's assertion of jurisdiction exposes defendants to the State's coercive power, and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause."[20] Thus, "[t]o obtain personal jurisdiction over a non-resident defendant in a diversity action, a plaintiff must show both that jurisdiction is proper

---

[19]*Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed R. Civ. P. 4(k)(1)(A)).

[20]*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

under the laws of the forum state and that the exercise of jurisdiction would not offend due process."[21]

In conducting the due-process analysis, the court must consider whether the defendant has such minimum contacts with the forum state "that he should reasonably anticipate being haled into court there."[22]  As explained by the Supreme Court in its 1945 opinion introducing the minimum-contacts analysis, "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[23]  "Depending on their relationship to the plaintiff's cause of action, an out-of-state defendant's contacts with the forum state may give rise to either general (all-purpose) jurisdiction or specific (case-linked) jurisdiction."[24]

### 1.     Specific Jurisdiction

Specific jurisdiction exists when "the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'"[25]  To establish minimum contacts for the exercise of specific jurisdiction within the bounds of due process, a plaintiff must show: (1) that the defendant purposefully directed activities at the forum state, and (2) that plaintiff's injuries arise out of the

---

[21]*Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (citation omitted); *see also Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1304–05 (10th Cir. 1994) ("The proper inquiry is . . . whether the exercise of jurisdiction is sanctioned by the long-arm statute of the forum state and comports with due process requirements of the Constitution." (citing *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990), *cert. denied*, 498 U.S. 1068 (1991))).

[22]*Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159–60 (10th Cir. 2010) (quoting *OMI Holdings, Inc.*, 149 F.3d at 1091).

[23]*Int'l Shoe Co.*, 326 U.S. at 316 (citations omitted).

[24]*Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (citing *Intercon, Inc.*, 205 F.3d at 1247; *Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014)).

[25]*Daimler*, 571 U.S. at 127 (alteration in original) (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).

defendant's forum-related activities.[26]  The Supreme Court elaborated upon the minimum

contacts necessary to support specific jurisdiction in the 2014 case of *Walden v. Fiore*,[27]

explaining that the defendant's suit related conduct must create a substantial connection with the

forum state that arises out of contacts between the defendant and the forum state, not contacts

between the plaintiff and the forum state, nor contacts between the defendant and persons who

reside in the forum state.[28]

If the plaintiff shows that both the "purposeful-direction" and "arising-out-of" prongs of

the minimum-contacts test are satisfied, the burden then shifts to the defendant to show that the

exercise of specific jurisdiction would "offend[] 'traditional notions of fair play and substantial

justice.'"[29]  The defendant "must present a compelling case that the presence of some other

considerations would render jurisdiction unreasonable."[30]

### 2. General jurisdiction

General personal jurisdiction permits a court to exercise power over a corporate

defendant in "instances in which the continuous corporate operations within a state [are] so

---

[26] *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414; *Fireman's Fund Ins. Co. v. Thyssen Mining Constr. of Can., Ltd.*, 703 F.3d 488, 493 (10th Cir. 2012) (stating that the defendant's minimum contacts with the state "must show that 'the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State,'" and "[t]he litigation must 'result[] from alleged injuries that arise out of or relate to those activities'" (alteration in original) (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 109 (1987); *Intercon, Inc.*, 205 F.3d at 1247); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) (in the tort context, the court asks whether the nonresident purposefully directed its activities at the forum state; in the contract context, the court sometimes asks if the nonresident availed itself of he privilege of conducting activities or consummating a transaction in the forum state.  In all contexts, the nonresident should not be haled into court based on mere random, fortuitous or attenuated contacts in the forum state).

[27] 571 U.S. 283 (2014).

[28] *Id.* at 284-86.

[29] *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075–76 (10th Cir. 2004) (quoting *OMI Holdings, Inc. v. Royals Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998)), *cert. denied*, 544 U.S. 974 (2005); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[30] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities."[31]  "Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test."[32]  In *Goodyear Dunlop Tires Operations, S.A. v. Brown*[33] and *Daimler AG v. Bauman*,[34] the Supreme Court clarified that even "substantial, continuous, and systematic" forum-related contacts are insufficient to confer general jurisdiction; rather, the defendant's contacts with the forum must be "*so* 'continuous and systematic' as to render [it] *essentially at home* in the forum State."[35]

For a corporate defendant, paradigmatic bases for the exercise of general jurisdiction include the defendant's place of incorporation and principal place of business.[36]  General jurisdiction in a forum other than the defendant's place of incorporation or principal place of business will exist only in "exceptional case[s]" where the defendant's operations in the forum are "so substantial and of such a nature as to render the corporation at home in that State."[37]  In contrast with specific jurisdiction, when a court finds that it has general personal jurisdiction over the defendant, that finding concludes the due-process inquiry and the defendant is subject to suit in the forum state for claims both with and without any connection to the state.[38]

---

[31] *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 924 (2011) (alteration in original) (quoting *Int'l Shoe Co.*, 326 U.S. at 318).

[32] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (quoting *Benton*, 375 F.3d at 1080).

[33] 564 U.S. 915 (2011).

[34] 571 U.S. 117 (2014).

[35] *Id.* at 139 (emphasis added) (quoting *Goodyear*, 564 U.S. at 919).

[36] *Id.* at 137.

[37] *Id.* at 139 n.19.

[38] *Id.* at 139 n.20 (explaining that the "multipronged reasonableness check" is to be used "when *specific* jurisdiction is at issue," and stating that "[w]hen a corporation is genuinely at home in the forum State . . . any second-step [reasonableness] inquiry would be superfluous" (citing *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 113–14 (1987))).

Finally, "[b]ecause the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived."[39] The Supreme Court has noted that "because the personal jurisdiction requirement is a waivable right, there are a 'variety of legal arrangements' by which a litigant may give 'express or implied consent to the personal jurisdiction of the court.'"[40] A defendant may consent to personal jurisdiction explicitly, such as through a "forum selection clause or some other agreement,"[41] or implicitly "through its actions, for example, by appearing in court and arguing the merits of the case."[42] "Whether such surrender of a personal immunity be conceived negatively as a waiver or positively as a consent to be sued, is merely an expression of literary preference."[43] In any context, the relinquishment of a constitutional right "must, at the very least, be clear."[44]

## B. Analysis

### 1. Specific Jurisdiction as to Allstate

Plaintiff argues that specific jurisdiction is proper as to Allstate under K.S.A. § 60-308(b)(1)(A) due to Allstate's transaction of business in Kansas, K.S.A. § 60-308(b)(1)(B) due to Allstate's commission of tortious acts in the state, and K.S.A. § 60-308(b)(1)(E) because Allstate entered into a contract with a resident of Kansas. "Because the Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process," the

---

[39]*Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982).

[40]*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) (quoting *Ins. Corp. of Ir., Ltd.*, 456 U.S. at 703); *see also Travelers Cas. and Surety Co. of Am. v. Unistar Fin. Serv. Corp.*, 35 F. App'x 787, 789 (10th Cir. 2002) (citing *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979)).

[41]*Acorda Therapeutics Inc. v. Mylan Pharms.*, 817 F.3d 755, 766 (Fed. Cir. 2016) (O'Malley, J., concurring) (citing *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315–16 (1964)), *cert. denied*, 137 S. Ct. 625 (2017).

[42]*Id.* (citing *Ins. Corp. of Ir., Ltd.*, 456 U.S. at 703).

[43]*Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939).

[44]*Fuentes v. Shevin*, 407 U.S. 67, 95 (1972).

Court here may "proceed directly to the constitutional issue."[45] "Consequently, this [C]ourt 'need not conduct a statutory analysis apart from the due process analysis,'"[46] and proceeds to evaluate whether Plaintiff's allegations as to Allstate are sufficient to satisfy due process.

### a. Minimum Contacts

In arguing that Allstate has sufficient minimum contacts, Plaintiff relies on Allstate's president on November 29, 2016 emailing to Plaintiff in Kansas the Vehicle Buyer's Order with instructions to sign and return the order form to Allstate; and Plaintiff's acceptance of the offer in Kansas signified by Shirey signing the order form and returning it to Allstate per its instructions. Plaintiff further states through Shirey's declaration that throughout November 2016, Caldwell, in phone and email communications, represented that the trucks were quality vehicles, reliable, and fleet-maintained by Penske. Plaintiff further relies on these phone and email communications with Caldwell, as well as its face-to-face meeting with Caldwell in Kansas, in alleging that Caldwell was Allstate's representative and agent and acted with Allstate's authority. Allstate and Caldwell deny that Caldwell was ever Allstate's agent or ever acted with Allstate's authority. Caldwell avers that he negotiated with Penske on behalf of Plaintiff such that Plaintiff was able to obtain the trucks at a price substantially less than the "dealer" price and that Caldwell signed the bill of sale for Allstate merely to expedite the transaction for Plaintiff's benefit. Caldwell attests that Allstate's only role in the transaction was to prepare the paperwork for

---

[45]*Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994) (citing *Volt Delta Res., Inc. v. Devine*, 740 P.2d 1089, 1092 (Kan. 1987)); *see Merriman v. Crompton Corp.*, 146 P.3d 162, 179 (Kan. 2006) ("In Kansas, the long arm statute is construed liberally to assert jurisdiction over nonresident defendants to the full extent allowed by the Due Process Clause." (citing *Kluin v. Am. Suzuki Motor Corp.*, 56 P.3d 829 (Kan. 2002))).

[46]*Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011) (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010)).

Penske's sale of the trucks to Plaintiff, which Allstate argues was Allstate merely being an instrumentality used to accomplish the transaction.

"As the [Supreme] Court in *International Shoe* explained, a nonresident corporate entity creates contacts for personal jurisdiction purposes through its authorized representatives; its employees, directors, officers and agents."[47]  Although "[a]n agent's contacts with the forum state may be imputed to a nonresident corporation for long-arm jurisdiction,"[48] when the issue of whether the corporation has sufficient contacts with Kansas to support personal jurisdiction depends on the actions of the purported agent, the "plaintiff . . . must produce some evidence to support its contention of agency" and meet its burden of establishing a prima facie case of jurisdiction.[49]

The Kansas Supreme Court has explained that a principal-agent relationship "is created 'when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests

---

[47] *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 458 (10th Cir. 1996) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[48] *Cory v. Aztec Steel Bldg., Inc.*, No. 03-4193-RDR, 2005 WL 1799207, at *4 (D. Kan. Apr. 5, 2005) (citing *Kuenzle*, 102 F.3d at 458–59).

[49] *Kiely v. Shores Grp., Inc.*, No. 93-2194-JWL, 1993 WL 405799, at *4 (D. Kan. Sept. 23, 1993) (citing Casad, Jurisdiction in Civil Action ¶ 4–3[1] (1998 and Supp. 2004)); *see also, e.g., Cory*, 2005 WL 1799207, at *5 ("Plaintiff has the burden of demonstrating a prima facie case of agency." (citation omitted)); *Quality Int'l Packaging, Ltd. v. Chamilia Inc.*, Civil Action No. 13-5235, 2015 WL 4749156, at *9 n.8 (D. N.J. Aug. 5, 2015). (noting that "Plaintiff bears the burden on a 12(b)(2) motion to establish personal jurisdiction through alter ego and agency with competent evidence" (emphasis omitted) (citations omitted)); *It's Intoxicating, Inc. v. Maritim Hotelgesellschaft mbH*, Civil No. 11-CV-2379, 2013 WL 3973975, at *6 (M.D. Pa. July 31, 2013) ("Under the federal rules, a plaintiff must plead 'enough facts from which a plausible claim of an agency relationship can be inferred . . . not simply assert in conclusory terms that a party is another party's agent for purposes of vicarious liability.  When the agency question is raised in the context of a *Rule 12(b)(2)* motion, however, the plaintiff's burden is the same as the burden of establishing jurisdiction.  Therefore, a Plaintiff may rely on pleadings alone *so long as the defendant has not disputed agency with competent evidence.*" (second emphasis added) (citations omitted)).

assent or otherwise consents so to act.'"[50, 51]  Kansas has recognized several types of agency based on the "actor's or agent's type of authority," including express authority, implied authority, and apparent authority.[52]  Express agency may exist where "the principal has delegated authority to the agent by words which expressly authorize the agent to do a delegable act."[53] Implied agency may exist

> if it appears from the statements and conduct of the parties and other relevant circumstances that the intention was to clothe the agent with such an appearance of authority that when the agency was exercised it would normally and naturally lead others to rely on the person's acts as being authorized by the principal.[54]

Finally, apparent agency "may exist if a principal has intentionally or by want of ordinary care induced and permitted third persons to believe a person is his or her agent, even though no authority, either express or implied, has been actually conferred upon the agent."[55]

The Court finds that Plaintiff has produced sufficient evidence in support of its contention that Caldwell's actions can be imputed to Allstate for purposes of long-arm

---

[50]*Rezac Livestock Comm'n Co. v. Pinnacle Bank*, 255 F. Supp. 3d 1150, 1160 (D. Kan. 2017) (quoting *Golden Rule Ins. Co. v. Tomlinson*, 335 P.3d 1178, 1188 (Kan. 2014)); *see also Cory*, 2005 WL 1799207, at *5 (stating that in Kansas, agency is defined "as a contract, either express or implied, by which one party confides to another the management of some business to be transacted in the confiding party's name, or on the confiding party's account, and by which the other assumes to do business and to render an account of it" (citing *Wheat v. Kinslow*, 316 F. Supp. 2d 944, 953–54 (D. Kan. 2003))).

[51]The Court applies Kansas law to the question of agency for the purposes of the personal jurisdiction analysis.  *See, e.g.*, *Loeffelbein v. Rare Medium Grp.*, No. Civ.A.02-2435-CM, 2003 WL 23484636, at *3–4 (D. Kan. Oct. 21, 2003) (applying Kansas law in analysis of sufficiency of allegations regarding actual or apparent agency for purposes of jurisdictional analysis); *Kiely*, 1993 WL 405799, at *4 (same); *Cory*, 2005 WL 1799207, at *4–5 (same).

[52]*See Golden Rule Ins. Co.*, 335 P.3d at 1188–90 (citation omitted).

[53]*Id.* at 1189 (citing *Prof'l Lens Plan, Inc. v. Polaris Leasing Corp.*, 710 P.2d 1297, 1303 (Kan. 1985)).

[54]*Id.* (citing *Prof'l Lens Plan, Inc.*, 710 P.2d at 1303); *see also Shane v. Log Star Homes of Am., Inc.*, Case No. 6:14-cv-01273-JTM, 2016 WL 7242517, at *8 (D. Kan. Dec. 15, 2016) (quoting *Golden Rule Ins. Co.*, 335 P.3d at 1189).

[55]*Golden Rule Ins. Co.*, 335 P.3d at 1189 (citing *Prof'l Lens Plan, Inc.*, 710 P.2d at 1303); *see also Shane*, 2016 WL 7242517, at *8 (quoting *Nat'l Bank of Andover v. Kan. Bankers Sur. Co.*, 225 P.3d 707, 723–24 (Kan. 2010)).

jurisdiction. Caldwell negotiated with Penske on behalf of Plaintiff, which resulted in Penske selling the trucks to Allstate and Allstate selling the trucks to Plaintiff in Kansas, at a price substantially lower than a dealer price. Before the sale was consummated, Caldwell made representations to Plaintiff face-to-face in Kansas, as well as by phone and email to Kansas, about the quality, reliability, and maintenance of the trucks. Caldwell's name and electronic signature were on the Motor Vehicle Bill of Sale on behalf of Allstate.[56] As Plaintiff posits, "[t]he only logical conclusion is that Allstate gave Caldwell actual authority to buy trucks for it." Thus, the Court imputes Caldwell's actions to Allstate in deciding whether Allstate has sufficient minimum contacts with the forum.

Plaintiff argues that Allstate is subject to specific jurisdiction because it has purposefully availed itself of the forum through the parties' contract-related communications and the contract itself. But the mere existence of a contract with a Kansas citizen is insufficient to establish the requisite minimum contacts in the forum state.[57] Rather, the court must "look[] to 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'"[58] In other words, "[t]he contract 'must have a substantial connection with the forum state.'"[59] The Supreme Court has stated that "although physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the state—either by

---

[56] Neither party initially remarked upon the Bill of Sale, but it was included in materials submitted by the Penske Defendants in connection with briefing on another issue. After noting the existence of this document, the Court ordered the parties to submit supplemental briefing discussing relevant agency law with respect to Caldwell and Allstate and whether Caldwell's contacts with the forum should be imputed to Allstate for purposes of determining whether Allstate had sufficient contacts with Kansas to support personal jurisdiction.

[57] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985); *TH Argic. & Nutrition, LLC v. Ace European Grp., Ltd.*, 488 F.3d 1287, 1288 (10th Cir. 2007).

[58] *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166–67 (10th Cir. 2011) (quoting *TH Argic. & Nutrition, LLC*, 488 F.3d at 1288).

[59] *TH Argic. & Nutrition, LLC*, 488 F.3d at 1288 (citation omitted).

the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact."[60]

The only aspect of performance specifically alleged to have taken place in Kansas is Plaintiff sending the purchase order form by email from its Kansas office. The bill of sale indicates that Plaintiff took delivery of the trucks directly from Penske, at Penske locations outside of Kansas. But the parties' prior negotiations during November 2016 through phone and email were connected to Kansas. Moreover, Caldwell, whose actions the Court imputes to Allstate, physically entered the State of Kansas and had a face-to-face meeting with Shirey on November 1, agreeing to help Plaintiff purchase the trucks. Moreover, Plaintiff's alleged injuries arise out of Allstate's forum-related activities conducted by Caldwell.

Thus, the Court finds that on balance—and largely based on the alleged conduct of Caldwell—Allstate had sufficient minimum contacts. The Court next proceeds to consider whether the exercise of specific jurisdiction would be reasonable in this case.

### b. Reasonableness

The second part of the due-process analysis asks whether the exercise of personal jurisdiction would be reasonable or whether subjecting [the defendant] to jurisdiction in the forum state would offend traditional notions of fair play and substantial justice.[61] Once a Plaintiff has satisfied its minimum-contacts burden, the burden shifts to the defendant to demonstrate that exercising personal jurisdiction would be unreasonable.[62] This inquiry requires the examination of five factors: (1) the burden on the defendant, (2) the forum state's interest in

---

[60]*Walden v. Fiore*, 571 U.S. 277, 285 (2014) (internal citation omitted) (citing *Keeton v. Hustler Magazine*, 465 U.S. 770, 773–74 (1984)).

[61]*Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010) (citation omitted).

[62]*Newsome v. Gallacher*, 722 F.3d 1257, 1271 (10th Cir. 2013) (citing *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1080 (10th Cir. 2008)).

resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.[63]

The minimum-contacts and reasonableness analyses are complementary, such that:

> [T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts].[64]

With this guidance in mind, the Court finds that the balance of the five factors weighs in Plaintiff's favor.

Because Allstate is located in Texas, litigating this action in Kansas will impose some burden. However, because "defending a suit in a foreign jurisdiction is not as burdensome as in the past," especially for sophisticated parties, the Court finds that this factor weighs only slightly in favor of Allstate.[65]

The second factor weighs in Plaintiff's favor, given that Kansas has an interest in resolving disputes involving its residents, particularly where the dispute involves the application of Kansas law.[66] Other than Plaintiff's claim under the Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA"), Kansas law will likely apply to most or all of

---

[63]*Id.* (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1095 (10th Cir. 1998)); *Benton v. Cameco Corp.*, 375 F.3d 1070, 1078 (10th Cir. 2004).

[64]*OMI Holdings, Inc.*, 149 F.3d at 1092 (first alteration added) (citation omitted).

[65]*Cont'l Am. Corp. v. Camera Controls Corp.*, 692 F.2d 1309, 1314 (10th Cir. 1982) (citing *Hanson v. Denckla*, 357 U.S. 235, 250–51 (1958)); *see also AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1061 (10th Cir. 2008).

[66]*See OMI Holdings, Inc.*, 149 F.3d at 1096 (citing *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 115 (1987)).

Plaintiff's other claims against Allstate, which sound in common-law contract, quasi-contract, fraud, and negligence.[67]

The third factor requires the Court to consider whether Plaintiff may receive convenient and effective relief in another forum. Although the Court is confident that Plaintiff could receive effective relief in another forum, litigating this action in Kansas is obviously more convenient for Plaintiff, given that it is a Kansas company. The Court finds that this factor also weighs in favor of Plaintiff.

The fourth factor considers the interstate judicial system's interest in obtaining the most efficient resolution of controversies. The key points to consider when evaluating this factor are "the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation."[68] In this case, all four points favor Plaintiff. The evidence and the majority of the witnesses are likely to be located Kansas, the wrong is alleged to have occurred in Kansas, Kansas law is likely to apply to the majority of Plaintiff's claims, and litigating this matter in Kansas will avoid piecemeal litigation with potentially inconsistent results, given the interrelatedness of Plaintiff's claims against the six defendants.

Finally, as to the fifth factor—the shared interest of the several states in furthering fundamental social policies—the parties agree that this factor is either neutral or irrelevant in the instant case, and therefore the Court does not address it. A strong showing of reasonableness

---

[67]*See infra* analysis of choice of law.

[68]*Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1281 (10th Cir. 2005) (quoting *OMI Holdings, Inc.*, 149 F.3d at 1097).

here fortifies Allstate's sufficient minimum contacts with Kansas, and the Court finds that it may exercise specific personal jurisdiction over Allstate.

### 2. Lack of Specific Jurisdiction as to the Navistar Defendants

Neither Navistar International Corporation nor Navistar, Inc. sells directly to citizens of Kansas. Navistar, Inc. sells its trucks, cab and chassis products and service parts through an exclusive network of dealers both within the state of Kansas and elsewhere. But Navistar International Corporation does not manufacture or sell goods of any kind. Rather, Navistar International Corporation is a holding company for Navistar, Inc. And it is a well-settled proposition that a "holding or parent company has a separate corporate existence from its subsidiary and is thus treated separately in the absence of circumstances justifying the disregard of the corporate entity."[69]

Because Plaintiff has made no argument to support that Navistar International Corporation has transacted business in Kansas by virtue of its control over or relationship with Navistar, Inc., the Court has no basis upon which to analyze this issue further and declines to do so.[70] Plaintiff has failed to allege that Navistar International Corporation transacted business in Kansas in a manner that would satisfy the purposeful-direction prong of the specific jurisdiction test.

---

[69]*Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1362 (10th Cir. 1974) (citation omitted).

[70]*See, e.g.*, *Creech v. P.J. Wichita, L.L.C.*, Case No. 16-CV-2312-JAR-GEB, 2017 WL 914810, at *4–5 (D. Kan. Mar. 8, 2017) (discussing factors used to evaluate whether to disregard corporate entity under alter-ego theory and impute jurisdictional contacts of subsidiary to parent corporation for purposes of personal jurisdiction analysis); *Eaves v. Pirelli Tire, LLC*, No. 13-1271-SAC, 2014 WL 1883791, at *5 (D. Kan. May 12, 2014) ("[P]laintiffs fail to argue and apply a particular legal theory for [their] allegations of treating all of these distinct legal entities as one. It is not this court's burden to proceed with an agency or alter ego legal theory and advocate its application here.").

### a.      Navistar, Inc.'s Transaction of Business in Kansas

As to Navistar, Inc., Plaintiff makes two arguments in support of specific jurisdiction. The first argument depends upon a stream-of-commerce theory. Plaintiff contends that "Navistar" has transacted business in Kansas within the meaning of K.S.A. § 60-308(b)(1)(A) and purposefully directed its activities toward the forum by intentionally placing its products in the stream of commerce in the Kansas market by selling them to its exclusive network of dealers in Kansas, who in turn sell those products to Kansans.

In this case, the Court need not analyze the factors relevant to minimum contacts under a stream-of-commerce theory. Even assuming that Navistar, Inc.'s sale of its products through distributors in Kansas indicates its intent to serve the Kansas market and is "an action of the defendant purposefully directed toward the forum State"[71] sufficient to satisfy the purposeful-direction prong of the due-process test, Plaintiff has not established that its injuries arise out of Navistar, Inc.'s forum-related activity.

When a defendant has purposefully directed activities at the forum state, the Court must next consider whether the plaintiff's alleged injuries "arise out of" the defendant's forum-related contacts.[72] Courts have generally followed one of three approaches in analyzing this "nexus" requirement: (1) proximate causation, (2) but-for causation, or (3) substantial connection.[73] The Tenth Circuit has rejected the substantial-connection approach outright,[74] but has considered

---

[71]*Asahi Metal Industry Co., Ltd.*, 480 U.S. at 112.

[72]*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008).

[73]*Id.* at 1078.

[74]*Id.*

without choosing between the two causation-based approaches.[75]  "A plaintiff satisfies the but-for standard if he shows the defendant's forum-related activities were an 'event in the causal chain leading to the plaintiff's injury.'"[76]  "The proximate cause standard, 'by contrast, is considerably more restrictive and calls for courts to examine[] whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim.'"[77]  The Court need not decide here which of these approaches is more appropriate, as Plaintiff has failed to demonstrate the requisite nexus under either.

The relevant facts alleged here are that Plaintiff purchased six trucks from Allstate, a Texas corporation, which acquired the trucks from the Penske Defendants.  Plaintiff then picked up the trucks from various Penske locations outside of Kansas.  There is no allegation that Navistar, Inc. played any role in these transactions, or that any of the six trucks at issue were ever sold by a Kansas distributor or even present in Kansas prior to Plaintiff's purchase.

Plaintiff argues that although it did not purchase its trucks from a Navistar dealer in Kansas, it would defy logic to conclude that purchasing Navistar trucks fails to "relate to" Navistar, Inc.'s activity of selling trucks.  However, Plaintiff's argument overlooks the requirement of some nexus between a defendant's forum-related activities and the injury alleged, and Plaintiff has not established that nexus here because it has failed to show how Navistar, Inc.'s sale of trucks in Kansas was an event in the causal chain leading to Plaintiff's injury.  Plaintiff's argument is more akin to a general jurisdiction argument.  Specific jurisdiction

---

[75]*See id.* at 1078–79; *see also Tomelleri v. MEDL Mobile, Inc.*, 657 F. App'x 793, 796 (10th Cir. 2016) (unpublished); *Newsome v. Gallacher*, 722 F.3d 1257, 1269–70 (10th Cir. 2013); *Emp'rs. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160–61 (10th Cir. 2010).

[76]*Tomelleri*, 657 F. App'x at 796 (quoting *Dudnikov*, 514 F.3d at 1078).

[77]*Id.* (alteration in original) (quoting *Dudnikov*, 514 F.3d at 1078).

requires a link between Navistar, Inc.'s contacts with Kansas and the instant case.[78]  Because there is no evidence that Navistar, Inc.'s forum-related activities were an event in the causal chain leading to Plaintiff's injury, Plaintiff cannot satisfy the but-for nexus standard nor the more restrictive proximate cause standard.

### b. Navistar, Inc.'s Alleged Tortious Acts

Plaintiff also alleges that Navistar, Inc. is subject to specific jurisdiction in this Court based on its commission of tortious acts that caused injury to Plaintiff in Kansas within the meaning of K.S.A. § 60-308(b)(1)(B).  Plaintiff references its claims including negligence and fraud claims, and argues that the Court has supplemental personal jurisdiction over any non-tort claims.

Although "[a]n injury occurring in Kansas as a result of tortious activity outside the state is considered a tortious act within the state for purposes of personal jurisdiction,"[79] Plaintiff must still allege sufficient facts to show purposeful direction.  In the intentional tort context, the Court must apply the "effects test" set forth in *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*[80]  That test, derived from the Supreme Court's decision in *Calder v. Jones*,[81] allows the plaintiff to establish purposeful direction by . . . showing that the defendant took (a) an intentional action,

---

[78]*See Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 216 (5th Cir. 2000) (citing *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)); *see also Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty.,* 137 S. Ct. 1773, 1781 (2017) (rejecting "sliding scale approach" to specific jurisdiction under which "the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims.  Our cases provide no support for this approach, which resembles a loose and spurious form of general jurisdiction"); *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456–57 (10th Cir. 1996) ("[T]he requirement 'that the claim arises out of or results from the forum-related activities, is . . . not satisfied' when the plaintiff 'would have suffered the same injury even if none of the [defendant's forum] contacts had taken place.'" (first alteration added) (citation omitted)).

[79]*Bank of Blue Valley v. Lasker Kim & Co. LLP*, Case No. 15-9303-CM, 2016 WL 3881336, at *3 (D. Kan. July 18, 2016) (citing *Thermal Components Co. v. Griffith*, 98 F. Supp. 2d 1224, 1227–28 (D. Kan. 2000)).

[80]514 F.3d at 1072.

[81]465 U.S. 783 (1984).

that was (b) expressly aimed at the forum state, with (c) knowledge that the brunt of the injury would be felt in the forum state.[82]

However, this Court agrees with the analysis of Judge Melgren that

> [The *Calder* effects] test requires "more than simply harm suffered by a plaintiff who resides in the forum state." Indeed, "the plaintiff cannot be the only link between the defendant and the forum state." Rather, the defendant's conduct must connect the defendant "to the forum in a meaningful way." "[M]ere foreseeability of causing an injury in the forum state is . . . insufficient."[83]

Here, Plaintiff's negligence claim states that "Navistar owed all consumers, including Plaintiff, the duty to design and manufacture the Engines in such a way as to ensure that the emissions systems would not fail and the defect would not occur," and that "Navistar breached this duty by negligently designing and/or manufacturing the engines."[84] But in the Tenth Circuit, the effects test is satisfied only where allegations suggest that the defendant intended to cause injury, or cause consequences that the defendant knew would lead to injury, in the forum state.[85] Thus, the *Calder* effects test cannot support specific jurisdiction for Plaintiff's allegations of "mere, untargeted negligence,"[86] and under the minimum-contacts analysis set forth above,

---

[82]*Dudnikov*, 514 F.3d at 1072.

[83]*Heffington v. Puleo*, Case No. 17-1192-EFM, 2018 WL 690995, at *5 (D. Kan. Feb. 2, 2018) (first alteration added) (citations omitted).

[84]Doc. 1 ¶¶ 141–42.

[85]*See Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 901 (10th Cir. 2017) ("Purposeful direction may also be established . . . when an out-of-state defendant's *intentional* conduct targets and has substantial harmful effects in the forum state." (citing *Calder*, 465 U.S. at 790–91)); *Speedsportz, LLC v. Menzel Motor Sports, Inc.*, No. 07-CV-624-TCK-TLW, 2009 WL 2921295, at *9 (N.D. Okla. Sept. 8, 2009) ("[C]ourts have held that Calder's 'effects test' has no application to negligence claims." (citations omitted)).

[86]*Dudnikov*, 514 F.3d at 1072 (explaining that in *Calder*, the Supreme "Court found specific jurisdiction in California was . . . appropriate because the defendants had not engaged in 'mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions, were expressly aimed at California'" (quoting *Calder*, 465 U.S. at 789)).

Plaintiff has failed to established that its injuries arise out of the Navistar Defendants' forum-related activity.

The Court also finds Plaintiff's intentional tort allegations insufficient to establish the elements of the *Calder* effects test. In its fraud claims, Plaintiff alleges that Navistar, Inc. knew of the defective nature of the MaxxForce engine but concealed that information from the public, including Plaintiff, and fraudulently induced consumers, including Plaintiff, into purchasing the trucks at issue by making false and material misrepresentations regarding the quality, reliability, and performance of the trucks' MaxxForce engines. The misrepresentations to which Plaintiff refers apparently include unspecified public statements, press releases, and advertising about certain superior attributes of the MaxxForce engine, specifically its fluid economy and expected certification under EPA emissions standards.

Though Plaintiff's fraud claims include allegations of intentional concealment and misrepresentation, Plaintiff alleges no facts to establish the second and third elements of the *Calder* effects test. As to the second element requiring an intentional act "expressly aimed" at the forum, the Tenth Circuit takes a "restrictive approach, holding that the forum state itself must be the 'focal point of the tort.'"[87] Taking together the second element and the third element, which requires "knowledge that the brunt of the injury would be felt in the forum state,"[88] it is not enough that injury in the forum state is foreseeable merely because a plaintiff lives there or has some relationships there.[89] Instead plaintiffs must establish "not only that defendants

---

[87]*Id.* at 1075 n.9 (citations omitted); *Shrader v. Biddinger*, 633 F.3d 1235, 1244 (10th Cir. 2011) (citation omitted).

[88]*Dudnikov*, 514 F.3d at 1072.

[89]*Id.* at 1077.

foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook *intentional actions that were expressly aimed at that forum state*."[90]

Plaintiff fails to make this showing. Instead of meaningfully addressing the elements necessary to establish purposeful direction in the tort context, Plaintiff generally relies on Navistar, Inc.'s awareness of foreseeable consequences based on its placement of products into the stream of commerce in Kansas and its alleged commission of tortious acts within the meaning of the Kansas long-arm statute. Plaintiff's allegations of fraudulent concealment and misrepresentation are devoid of any particular link to Kansas other than the fact that Plaintiff is located in Kansas. But "[t]he plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction under *Calder*."[91] Nor do Plaintiff's allegations show that Navistar, Inc. expressly aimed its representations, public statements, press releases, and advertising at Kansas residents or had knowledge that the brunt of any injury would be felt in Kansas. Further, though Plaintiff has not specified the medium Navistar, Inc. used for its alleged statements here, "evidence of mere placement of advertisements in nationally distributed papers or journals does not rise to the level of purposeful contact with a forum required by the Constitution in order to exercise personal jurisdiction over the advertiser."[92] The Court cannot find that Kansas was the focal point of the torts alleged.

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'"[93]

---

[90]*Id.*

[91]*Shrader v. Biddinger*, 633 F.3d at 1244 (citation omitted).

[92]*Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994) (citing *Williams v. Bowman Livestock Equip. Corp.*, 927 F.2d 1128, 1131 (10th Cir. 1991)).

[93]*Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).

"For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."[94]  Plaintiff's tort allegations against the Navistar Defendants lack facts showing purposeful direction under the *Calder* effects test.  Having found insufficient minimum contacts, the Court need not conduct the second part of the due-process analysis by asking whether the exercise of personal jurisdiction over the Navistar Defendants would be reasonable, and now turns to the question of whether it may exercise general personal jurisdiction on the basis of these Defendants having registered to do business in Kansas.

### 3.  General Jurisdiction as to the Navistar Defendants

Plaintiff alleges in its Complaint that this Court has personal jurisdiction over the Navistar Defendants because Plaintiff's claims arose in Kansas, both Navistar Defendants are registered to do business in Kansas and have a registered agent for service of process in Kansas, and further both have substantial, systematic and continuous contact with the State of Kansas.

But Plaintiff makes no specific allegations sufficient to establish that the Navistar Defendants are subject to general personal jurisdiction in Kansas on the basis of their "substantial, systematic and continuous" business activities within the State.  To find a defendant subject to the general personal jurisdiction of this Court because it sells its products through a network of independent dealers that includes dealers in Kansas, as Navistar, Inc. does, would be "unacceptably grasping" under the Supreme Court's reasoning in *Daimler AG v. Bauman*.[95]

Rather than arguing that the Navistar Defendants are subject to general personal jurisdiction in Kansas due to the nature of their business operations in Kansas, Plaintiff's

---

[94]*Id.* at 284; *see also Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1280–81 (10th Cir. 2016).

[95]571 U.S. 117, 138 (2014).

arguments hinge upon the fact that the Navistar Defendants are registered to do business in Kansas. Plaintiff contends that foreign corporations seeking to do business in Kansas are first required to register with the Kansas Secretary of State, and that such registration amounts to constitutionally valid, express consent to jurisdiction.

K.S.A. § 17-7931 provides that "[b]efore doing business in the state of Kansas, a foreign covered entity shall register with the secretary of state."[96] K.S.A. § 17-7931(g) provides that to register, a foreign covered entity must submit to the secretary of state

> an irrevocable written consent of the foreign covered entity that actions may be commenced against it in the proper court of any county where there is proper venue by the service of process on the secretary of state as provided for in K.S.A. 60-304, and amendments thereto, and stipulating and agreeing that such service shall be taken and held, in all courts, to be as valid and binding as if due service had been made upon the governors of the foreign covered entity.[97]

The Navistar Defendants do not dispute that they are registered to do business in Kansas, but argue that whether consent-by-registration has survived the Supreme Court's decision in *Daimler* is an unsettled area of law. The Navistar Defendants urge this Court to hold that exercising general jurisdiction on the basis of consent-by-registration would be inconsistent with *Daimler*, which they contend changed the landscape for analysis of general jurisdiction by rejecting the notion that a defendant corporation could be subject to general jurisdiction in every state in which it is merely "doing business."

In *Merriman v. Crompton Corp.*,[98] decided eight years before the *Daimler* decision, the Kansas Supreme Court held that the Kansas statute requiring certain foreign corporations to

---

[96]K.S.A. § 17-7931.

[97]K.S.A. § 17-7931(g).

[98]146 P.3d 162 (Kan. 2006).

register required that such corporations expressly consent to general personal jurisdiction.[99]  The Kansas Supreme Court noted that "[m]any courts have recognized that such consent statutes provide a basis for exercising general jurisdiction"[100] because "although parties may not waive subject matter jurisdiction, they may waive personal jurisdiction."[101]

*Merriman* is the Kansas Supreme Court's last word on the interpretation of the business registration statute.  And this interpretation, that the statute requires express consent to general personal jurisdiction, is one this Court must adopt.  Binding circuit precedent directs this Court to look to Kansas law to determine whether the business registration statute at issue provides a basis for jurisdiction over registered corporations.

While the Tenth Circuit has not addressed whether the Kansas business registration statute constitutionally confers general personal jurisdiction in Kansas over a defendant who registers to do business in the forum,[102] the Tenth Circuit has historically followed the practice of determining whether a foreign corporation's registration to do business constitutes consent by reference to the state statute governing such issue or, in some instances, case law construing that statute.[103]

---

[99]*Id.* at 171 (interpreting K.S.A. § 17-7301, the predecessor statute to the substantively indistinguishable current statute, K.S.A. § 17-7931(g)).

[100]*Id.* at 170 (collecting cases).

[101]*Id.* at 171 (citing *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982)).

[102] *But see Travelers Fire Ins. Co. v. Ranney-Davis Mercantile Co.*, 173 F.2d 844, 846–49 (10th Cir. 1949) (emphasis added) (finding no sound reason why a state should not have the power to compel foreign corporations seeking to do business in the state to submit to the jurisdiction of the state for all controversies arising between the corporation and citizens of the state).

[103]*See, e.g., Budde v. Kentron Hawaii, Ltd.*, 565 F.2d 1145, 1147–49 (10th Cir. 1977) (relying on Colorado law, and specifically opinions from the Colorado Supreme Court and the Colorado Court of Appeals, that the statute constituted consent to general personal jurisdiction); *Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1036 (10th Cir. 1975) (relying on language of New Mexico statute and affording "great weight and credence" to the trial court's interpretation of the statute, based on unsettled New Mexico law, that the statute did not confer general personal jurisdiction).

Thus, although the Tenth Circuit has not addressed whether a state can, after *Daimler*, require a registering foreign corporation to consent to general personal jurisdiction without violating the Due Process Clause, binding circuit precedent directs this Court to look to Kansas law to determine whether the business registration statute at issue provides a basis for jurisdiction over registered corporations.[104]

The Kansas Supreme Court has held that the state's business registration statute *does* provide for general personal jurisdiction through consent. Although the Navistar Defendants point out that K.S.A. § 17-7931 makes no express mention of consenting to personal jurisdiction, and further argue that the Kansas statute lacks "constitutionally required clarity" necessary to "indicate that a corporation is consenting to suit in Kansas," the Kansas Supreme Court has definitively spoken on the meaning of this statute.[105] In registering to do business in Kansas, the Navistar Defendants bore the risk that this "interpretation may be put upon [registration] by the courts."[106] And in maintaining their registration to do business in Kansas since *Merriman* was decided, the Navistar Defendants have consented to general personal jurisdiction in Kansas under K.S.A. § 17-7931.

It is a separate question whether the state statute satisfies due process in requiring express consent. This Court is cognizant of the fact that "[a] state court's assertion of jurisdiction exposes

---

[104] *See In re: Syngenta AG MIR 162 Corn Litigation*, MDL No. 2591, Case No. 14-md-2591-JWL, 2016 WL 1047996, at *1 (D. Kan. Mar. 11, 2016) (citing *Robert Mitchell Furniture Co. v. Selden Breck Constr. Co.*, 257 U.S. 213, 215-16 (1921) (state's construction of its own statute determines the effect of registration).

[105] The Navistar Defendant urge the Court to take a similar approach as the Delaware Supreme Court took in *Genuine Parts Co. v. Cepec*, 137 A.3d 123, 139–43 (Del. 2016) (interpreting Delaware statute as providing for personal jurisdiction over registered businesses when causes of action arise out of their activities in Delaware). The Court is unpersuaded. Kansas law does not require that all foreign businesses register with the state, but only those doing business in Kansas; and K.S.A. §17-7932 lists categories of activities that do not amount to "doing business" in Kansas, including "selling through independent contractors." In any event it is undisputed that the Navistar Defendants are registered in Kansas.

[106] *Pennsylvania Fire Ins. Co. v. Gold Issue Mining Co.,* 243 U.S. 93, 96 (1917).

defendants to the State's coercive power and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause."[107]  And, this is a question of federal law.[108]

Again, the Tenth Circuit has not addressed, post *Daimler*, whether the Kansas business registration statute, K.S.A. § 17-7931(g), constitutionally confers general personal jurisdiction in Kansas over a defendant who registers to do business in the forum.  Nor has it addressed any other state's business registration statute in the context of *Daimler*.  However, in an opinion issued seventy years ago, the Tenth Circuit upheld the District of Kansas's exercise of jurisdiction over insurance corporations that had complied with a Kansas statute requiring—as a condition precedent to transacting business in Kansas—that such companies file an irrevocable consent that actions could be commenced against them in the proper court of any Kansas county in which the cause of action arose or in which the plaintiff resided.[109]  The Tenth Circuit noted that "[t]he opinion of the Supreme Court in the *Mitchell Furniture Company* case . . . indicates that a statute relating to all causes of action, whether growing out of business transactions within or without the state, would be valid."[110]  Even assuming that the "the business transacted in connection with the[] policies was done in Oklahoma,"[111] the Tenth Circuit found "[n]o sound reason . . . why the state should not have power to compel foreign corporations seeking entrance

[107] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[108] *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 626 (2d Cir. 2016) ("If the state has purported to exercise jurisdiction over the foreign corporation, then the question may arise whether such attempt violates the due process clause or the interstate commerce clause of the federal constitution.  This is a federal question and, of course, the state authorities are not controlling.  But it is a question that is not reached for decision until it is found that the State statute is broad enough to assert jurisdiction over the defendant in a particular situation." (quoting *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 222 (2d Cir. 1963))).

[109] *Travelers Fire Ins. Co. v. Ranney-Davis Mercantile Co.*, 173 F.2d 844, 849 (10th Cir. 1949).

[110] *Id.* at 848 (citing *Robert Mitchell Furniture Co. v. Selden Breck Constr. Co.*, 257 U.S. 213, 215–16 (1921)).

[111] *Id.* at 847.

to the state to agree that while engaged in business under such license, the state court should have jurisdiction of all controversies arising between it and the citizens of the state."[112]

Consent jurisdiction was recognized by the Supreme Court in *Pennsylvania Fire Insurance Co. v. Gold Issue Mining Co.*,[113] in which the Court held that jurisdiction arising from the forum's requirement of consent to service of process did not deprive a foreign insurance company of due process even though the consent was its only apparent contact with the forum.[114]

Although *Pennsylvania Fire* has not been expressly overruled, there is a split of authority as to its continued viability. As the Kansas Supreme Court noted, some courts have determined that if consent is the sole ground for the exercise of jurisdiction, this does not comport with due process, concluding that the due process holding in *Pennsylvania Fire* was implicitly overruled by *International Shoe Co.*[115]

In *Daimler*, the Supreme Court has undoubtedly narrowed the scope of general personal jurisdiction such that a corporate defendant will typically only be subject to such jurisdiction in its place of incorporation and principal place of business,[116] except in the "exceptional case" where the defendant's operations in the forum are "so substantial and of such a nature as to render the corporation at home in that State."[117] However, the Supreme Court's only mention of the concept of consent jurisdiction in *Daimler* was in the context of differentiating precedent

---

[112]*Id.*

[113]243 U.S. 93 (1917).

[114]*Id.* at 95.

[115]*Merriman v. Crompton Corp.*, 146 P.3d 162, 174–75 (Kan. 2006) (citations omitted).

[116]*Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citation omitted).

[117]*Id.* at 139 n.19.

discussing the requirements for general jurisdiction from cases in which the defendant had "consented to suit in the forum."[118]

The Navistar Defendants maintain that based on the Supreme Court's substantial curtailment of the exercise of general jurisdiction in *Daimler*, a majority of courts to consider the issue since that decision have rejected consent-by-registration as a constitutionally-sound basis for general jurisdiction.  Even before *Daimler*, the circuits courts were split "as to whether . . . consent-by-registration is still a viable basis for personal jurisdiction, or whether it has been subsumed by the 'minimum-contacts' analysis subsequently introduced in *International Shoe Co. v. State of Washington, Office of Unemployment Compensation & Placement*, 326 U.S. 310 (1945)."[119]

But, as Judge John Lungstrum noted in *In re: Syngenta AG MIR 162 Corn Litigation*,[120] certain circuit court cases finding that "mere compliance with a registration statute does not support jurisdiction . . . are of little persuasive value because the courts did not directly address the issue of consent or the relevant Supreme Court jurisprudence."[121]  For example, the Second Circuit found that "in the absence of a clear legislative statement and a definitive interpretation

---

[118]*Id.* at 129 ("[The Court's] 1952 decision in *Perkins v. Benguet Consol. Mining Co.* remains the textbook case of general jurisdiction appropriately exercised over a foreign corporation *that has not consented to suit in the forum.*" (alteration in original) (emphasis added) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 928 (2011)); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (noting, in specific jurisdiction analysis, that "[w]here a forum seeks to assert jurisdiction over an out-of-state defendant *who has not consented to suit there*, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities" (emphasis added) (footnote omitted) (citations omitted)).

[119]*Takeda GmbH v. Mylan Pharms. Inc.*, Civ. Action No.: 15-3384 (FLW)(DEA), 2016 WL 146443 at *3 (D. N.J. Jan. 12, 2016) (comparing *Holloway v. Wright & Morrissey, Inc.*, 739 F.2d 695, 697 (1st Cir. 1984), *Bane v. Netlink, Inc.*, 925 F.2d 637, 640 (3d Cir. 1991), *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1200 (8th Cir. 1990), and *King v. Am. Fam. Mut. Ins. Co.*, 632 F.3d 570, 574 (9th Cir. 2011) with *Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745, 748 (4th Cir. 1971), *Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 183 (5th Cir. 1992), and *Wilson v. Humphreys (Cayman), Ltd.*, 916 F.2d 1239, 1245 (7th Cir. 1990)).

[120]MDL No. 2591, Case No. 14-md-2591-JWL, 2016 WL 1047996 (D. Kan. Mar. 11, 2016).

[121]*Id.* at *2 (citing *Ratliff*, 444 F.2d at 748; *Wilson*, 916 F.2d at 1245; *Consol. Dev. Corp. v. Sherritt, Inc.*, 2016 F.3d 1286, 1293 (11th Cir. 2000)).

by the Connecticut Supreme Court and in light of constitutional concerns," the Connecticut statute at issue did not require registering corporations to "submit to the general jurisdiction of Connecticut courts."[122]  Although the Second Circuit stated that a state statute requiring consent might present "a more difficult constitutional question about the validity of such consent after *Daimler*," it left open the possibility that "a carefully drawn state statute that expressly required consent to general jurisdiction as a condition on a foreign corporation's doing business in the state . . . might well be constitutional."[123]  Similarly in *AM Trust v. UBS AG*,[124] *Gulf Coast Bank & Trust Co. v. Designed Conveyor Systems, L.L.C.*,[125] and *Waite v. All Acquisition Corp.*,[126] the Ninth, Fifth, and Eleventh Circuits found that the California, Louisiana, and Florida statutes, respectively, did not require that the foreign corporation consent to general personal jurisdiction as a condition of doing business in the state.  And the Eleventh Circuit further remarked that "[t]ogether, *Pennsylvania Fire* and *Robert Mitchell Furniture Co.* . . . . establish that whether appointing an agent for service of process subjects a foreign defendant to general personal jurisdiction in the forum depends upon the state statutory language and state court decisions interpreting it."[127]  In short, these post *Daimler* circuit court decisions are inapposite.

Thus, although the Tenth Circuit has not addressed whether a state can, after *Daimler*, require a registering foreign corporation to consent to general personal jurisdiction without

---

[122]*Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 641 (2d Cir. 2015).  *See also AM Trust v. UBS AG*, 681 F. App'x 587 (9th Cir. 2017) (California statute does not require consent to general personal jurisdiction); *Gulf Coast Bank & Tr. Co. v. Designed Conveyor Systems, L.L.C.*, 717 F. App'x 394 (5th Cir. 2017) (Louisiana statute does not require consent as a condition of doing business in the state).

[123]*Brown,* 814 F.3d at 640–41.

[124]681 F. App'x 587 (9th Cir. 2017).

[125]717 F. App'x 394 (5th Cir. 2017).

[126]901 F.3d 1307 (11th Cir. 2018), *cert. denied*, 139 S. Ct. 1384 (2019).

[127]*Id*. at 1319.

violating the Due Process Clause, binding circuit precedent directs this Court to look to Kansas law to determine whether the business registration statute at issue provides a basis for jurisdiction over registered corporations. Furthermore, given that the Kansas statute requires consent to general personal jurisdiction, and absent authority holding that *Pennsylvania Fire* or *Robert Mitchell* have been overruled, this Court concludes that the Kansas registration statute comports with the Due Process Clause in requiring consent to general personal jurisdiction.

The Court agrees with the sound analysis of Judge Lungstrum in *In re: Syngenta AG MIR 162 Corn Litigation*,[128] in which he concluded that (1) the Supreme Court had not overruled *Pennsylvania Fire* and other cases sanctioning consent by registration, either explicitly or effectively by adopting *International Shoe*'s minimum-contacts standard;[129] (2) various federal circuit courts had endorsed the concept of consent by registration since *International Shoe*;[130] and (3) "the Court in *Daimler* distinguished its general jurisdiction jurisprudence from instances of consent to suit, thereby undermining any argument that the Court intended to speak to the issue of consent in discussing general jurisdiction in that case."[131]

Moreover, as recently explained by a federal district judge in the District of New Mexico in another case involving Navistar, Inc.:

> Navistar may be correct that consent by registration conflicts with the spirit of *Daimler*. Nevertheless, these [consent-by-registration] statutes were specifically endorsed in *Pennsylvania Fire* and in the

---

[128] MDL No. 2591, Case No. 14-md-2591-JWL, 2016 WL 1047996 (D. Kan. Mar. 11, 2016).

[129] *Id.* at *2 (citing *Olberding v. Ill. Cent. R. Co.*, 346 U.S. 338, 341–42 (1953); *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982); *Bendix v. Autolite Corp. v. Midwesco Enters., Inc.*, 486 U.S. 888 (1988)).

[130] *Id.* (citations omitted).

[131] *Id.* (citing *Forest Labs., Inc. v. Amneal Pharms. LLC*, Civil Action No. 14-508-LPS, 2015 WL 880599, at *13 (D. Del. Feb. 26, 2015)). *See also Snyder Insurance Services, Inc. v. Sohn*, Case No. 16-CV-2535-DDC-GLR, 2016 WL 6996265, at *3–4 (D. Kan. Nov. 30, 2017); *AK Steel Corp. v. PAC Operating Ltd. Partnership*, Case No. 2:15-CV-09260-CM-GEB, 2017 WL 3314294, at *3–4 (D. Kan. Aug. 3, 2017). *But see 2000 International Ltd. v. Chambers*, No. 99-2123-JTM, 2000 WL 1801835, at *4 (D. Kan. Nov. 6, 2000) (decided six years before *Merriman*).

> *Budde* cases as a constitutional means of exercising general
> personal jurisdiction over foreign corporations. It is even possible
> that the Tenth Circuit or the Supreme Court will at some point
> deem consent by registration statutes . . . unconstitutional. But
> until that happens, a lower court should not, "on its own authority .
> . . take[] the step of renouncing [Supreme Court precedent]."
> *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477,
> 484, 109 S. Ct. 1917, 104 L.Ed.2d 526 (1989). "If precedent of
> [the Supreme] Court has direct application to a case, yet appears to
> rest on reasons rejected in some other line of decisions, the [lower
> court] should follow the case which directly controls, leaving to
> [the Supreme] Court the prerogative of overruling its own
> decisions." *Id.*[132]

In the absence of specific guidance from the United States Supreme Court or the Tenth

Circuit to the contrary, this Court will not disregard Supreme Court precedent finding consent by

registration valid "based on speculation about how the [Supreme] Court might view jurisdiction

in contexts other than that discussed in *Daimler*."[133]

## IV. Motions to Dismiss for Failure to State a Claim

### A. Economic Loss Doctrine

Based on the facts drawn from the Complaint and allegiant to the legal standards for

motions to dismiss under Rule 12(b)(6), the Court finds and concludes as follows.

Both Allstate and the Penske Defendants move to dismiss Plaintiff's tort claims against

them on the basis that such claims are barred by the economic loss doctrine. In addition to

claims sounding in contract and quasi-contract, Plaintiff brings claims against Allstate for

fraudulent concealment, fraud in the inducement, negligent misrepresentation, negligence, and

deceptive trade practices under the Texas DTPA. Plaintiff's only claims against the Penske

Defendants are for fraudulent concealment, fraudulent inducement, and negligence.

---

[132]*Schmidt v. Navistar, Inc.*, 18cv321 KG/KBM, 2019 WL 1024285, at *6 (D.N.M. Mar. 4, 2019) (first alteration added), *appeal docketed*, No. 19-701 (10th Cir. June 3, 2019).

[133]*In re: Syngenta*, 2016 WL 1047996, at *3.

Allstate argues that because Plaintiff has alleged the existence of a contractual relationship with Allstate in its Complaint, the economic loss doctrine bars Plaintiff from conflating a contract-based claim into a tort theory of recovery. While Plaintiff has not alleged a contract with the Penske Defendants, the Penske Defendants also argue that the economic loss doctrine should bar Plaintiff's tort claims against them because those claims attempt to avoid the privity requirements under warranty law and because Plaintiff's fraud and negligence allegations concern the quality and characteristics of the trucks, and are thus intrinsic to its contract claims, which it has made against Allstate.

In its fraud claims, Plaintiff alleges that both Allstate and the Penske Defendants misrepresented the trucks' quality, condition, and reliability, and intentionally failed to disclose information regarding the trucks' defective condition, knowing and intending that Plaintiff would rely upon such representations and omissions in deciding to purchase the trucks. In *both* its negligent misrepresentation and negligence claims, Plaintiff alleges that Allstate and the Penske Defendants breached their duty to exercise reasonable care and to not misrepresent the trucks' quality, condition, and reliability. Finally, in its state statutory consumer-protection claim against Allstate, Plaintiff alleges that Allstate's knowing and intentional misrepresentations and omissions when selling and warranting the trucks constituted unlawful, deceptive acts in violation of the Texas DTPA, and seeks damages, attorney fees, and all other relief allowed under that act.

Before the Court can determine whether Plaintiff's fraud and negligence claims are barred by the economic loss doctrine, the Court must decide which state's law applies to those

claims. "[A] federal court sitting in diversity must apply the substantive law of the state in which it sits, including the forum state's choice-of-law rules."[134]

Plaintiff states that Kansas law applies. Allstate makes no argument regarding choice of law but relies exclusively on Kansas cases in arguing for the dismissal of Plaintiff's tort claims. The Penske Defendants note that there could be a question as to whether Pennsylvania law applies, given that Penske Defendants are located in Pennsylvania and the bills of sale were signed there. But, the Penske Defendants further acknowledge that the Court need not engage in a choice of law analysis on this point, because both Kansas and Pennsylvania recognize the economic loss doctrine in the commercial product-liability context.

Where the outcome of a dispute would be the same under the laws of either state, the Court need not decide the conflict and may apply Kansas law.[135] But the Court reserves judgment on whether the outcome would be the same under Pennsylvania and Kansas law, finding that another rule supports the application of Kansas law to Plaintiff's tort claims against both Allstate and the Penske Defendants.

Kansas courts have consistently applied the doctrine of *lex loci delicti* to determine choice of law in tort cases.[136] Under this rule, the law of the state where the tort occurred

---

[134]*Boyd v. Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 123 F.3d 1351, 1352–53 (10th Cir. 1997) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 495–97 (1941); *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994)).

[135]*See Brenner v. Oppenheimer & Co.*, 44 P.3d 364, 372 (Kan. 2002) (citing *Shutts v. Phillips Petroleum Co.*, 732 P.2d 1286, 1291 (Kan. 1987), *cert. denied*, 487 U.S. 1223 (1988)); *Howard v. Ferrellgas Partners, L.P.*, 92 F. Supp. 3d 1115, 1123 (D. Kan. 2015) (citation omitted).

[136]*See Brown v. Kleen Kut Mfg. Co.*, 714 P.2d 942, 944 (Kan. 1986) (citing *McDaniel v. Sinn*, 400 P.2d 1018 (Kan. 1965)); *Ling v. Jan's Liquors*, 703 P.2d 731, 735 (Kan. 1985) (citations omitted); *Ritchie Enters. v. Honeywell Bull, Inc.*, 730 F. Supp. 1041, 1046 (D. Kan. 1990) (citations omitted). For contract claims, the *lex loci contractus* doctrine applies, requiring the Court to apply the law of the state where the contract is made. A contract is made where the last act necessary for its formation occurs. *See Found. Prop. Invs., LLC v. CTP, LLC*, 159 P.3d 1042, 1046 (Kan. Ct. App. 2007) (citations omitted).

controls.[137]  However, where the injury occurs in Kansas and the negligent act occurs in another

state, the law of the place of injury controls because it is the last act necessary to complete the

tort.[138]  "When a person sustains loss by misrepresentation, 'the place of the wrong is where the

loss is sustained,' not where the misrepresentations were made."[139]  "The law of the place where

the 'effects' of a misrepresentation were felt controls."[140]  Because the effects of the defendants'

alleged fraud and negligence were felt by Plaintiff in Kansas, Kansas law applies.[141]

    The economic loss doctrine is "a judicially created doctrine that sets forth the

circumstances under which a tort action is prohibited if the only damages suffered are economic

losses."[142]  "In its original form, the economic loss doctrine simply prohibited a commercial

buyer of defective goods from suing in negligence or strict liability when the only injury

consisted of damage to the goods themselves."[143]  Since the doctrine's adoption by the United

States Supreme Court in *East River S.S. Corp. v. Transamerica Delaval, Inc.*,[144] courts have

---

[137]*Brown*, 714 P.2d at 944.

[138]*Id.*; *Ling*, 703 P.3d at 735; *Merriman v. Crompton Corp.*, 146 P.3d 162, 180 (Kan. 2006) (citation omitted).

[139]*Atchison Casting Corp. v. Dofasco, Inc.*, 889 F. Supp. 1445, 1456 (D. Kan. 1995) (quoting *Raymark Indus., Inc. v. Stemple*, 714 F. Supp. 460, 464 (D. Kan. 1988)); *see also Cinema Scene Mktg. & Promotions, Inc. v. Calidant Capital, LLC*, Case No. 2:16-CV-2759-JAR, 2017 WL 3730475, at *3 (D. Kan. Aug. 30, 2017) (citing *Raymark Indus., Inc.*, 714 F. Supp. at 464; *Seitter v. Schoenfeld*, 678 F. Supp. 831, 836 (D. Kan. 1988)); *Ritchie Enters.*, 730 F. Supp. at 1046 (stating that under the doctrine of *lex loci delicti*, "Kansas law would govern the plaintiff's fraud claim").

[140]*Atchison Casting Corp.*, 889 F. Supp. at 1456 (quoting *Seitter*, 678 F. Supp. at 836).

[141]Allstate makes no separate argument regarding whether Plaintiff's Texas DTPA claim, which arises under a Texas state statute, is a theory of recovery that should be barred by the economic loss doctrine.  For the purposes of the choice-of-law analysis, the Court views this claim as "most closely analogous to a common law tort claim for fraudulent misrepresentation and therefore subject to the choice of law analysis for tort claims."  *In re Bridgestone/Firestone, Inc. v. Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069, 1078 n.6 (S.D. Ind. 2001) ("Courts consistently examine the specific claims made in a particular case to determine whether a claim under a consumer protection statute should be treated as a tort or a contract action for choice of law purposes." (citations omitted)).

[142]*David v. Hett*, 270 P.3d 1102, 1105 (Kan. 2011) (quoting *Indem. Ins. Co. v. Am. Aviation*, 891 So. 2d 532, 536 (Fla. 2004)).

[143]*Rinehart v. Morton Bldgs., Inc.*, 305 P.3d 622, 627 (Kan. 2013) (citation omitted).

[144]476 U.S. 858, 868–76 (1986).

extended its application beyond the commercial product-liability sphere to preserve the distinctions between contract and tort law.[145]

In *David v. Hett*,[146] the Kansas Supreme Court held that the economic loss doctrine

> did not bar a homeowner's claims to recover economic damages caused by negligently performed residential construction services. *David* observed the trend in other jurisdictions to limit application of the economic loss doctrine to situations where the injury complained of cannot be traced back to a tort duty arising independent of contact.[147]

Two years later, in *Rinehart v. Morton Buildings, Inc.*,[148] the Kansas Supreme Court upheld the Kansas Court of Appeals decision that the economic loss doctrine did not bar the plaintiffs' negligent misrepresentation claims, which were based on the defendant's statements that it would complete a pre-engineered building for the plaintiffs' home and business in a timely manner, that the building would accommodate the plaintiffs' needs, and that the building would meet or exceed industry standards.[149] But the Kansas Supreme Court did not base its ruling on lack of privity, as the Court of Appeals did.[150] Rather, the Kansas Supreme Court determined that the plaintiffs' negligent misrepresentation claims were not barred by the economic loss doctrine because the duty at issue arose separately from the contract by operation of law.[151]

---

[145]*Rinehart*, 305 P.3d at 628–29 (citations omitted).

[146]270 P.3d 1102 (Kan. 2011).

[147]*BHC Dev., L.C. v. Bally Gaming, Inc.*, 985 F. Supp. 2d 1276, 1287 (D. Kan. 2013) (citing *David*, 270 P.3d at 1105–11).

[148]305 P.3d 622 (Kan. 2013).

[149]*Id.* at 625–32.

[150]*See id.* at 626–27, 632.

[151]*See id.* at 632; *see also Corvias Military Living, LLC v. Ventamatic, Ltd.*, 397 P.3d 441, 446 (Kan. Ct. App. 2017) (quoting *Rinehart*, 305 P.3d at 622).

Relying on *Rinehart*, this Court recently held in *Cinema Scene Marketing & Promotions, Inc. v. Calidant Capital, LLC*[152] that neither the plaintiffs' negligent misrepresentation nor fraudulent misrepresentation claims were barred by the economic loss doctrine.[153]  *In Cinema Scene*, the plaintiffs alleged that the defendants lied to induce them to sign a buy-out letter of intent, despite the defendants having neither the money nor the intent to buy Plaintiffs' business.[154]  In finding the economic loss doctrine no bar to the plaintiffs' tort claims, this Court explained:

> The KSC [Kansas Supreme Court] rejected contractual privity as a basis to determine whether the economic loss doctrine applies because it is not an element of a misrepresentation claim and because the Uniform Commercial Code does not displace fraud and misrepresentation claims.  The KSC noted that such a bright-line rule would have wide-ranging consequences.  The KSC stated the better approach was to focus on the nature of the negligent misrepresentation tort.  After noting the elements of negligent misrepresentation restricted liability by imposing a legal duty only in limited circumstances, the KSC ultimately held "negligent misrepresentation claims are not subject to the economic loss doctrine because the duty at issue arises by operation of law and the doctrine's purposes are not furthered by its application under these circumstances."  Because this rationale applies equally to fraudulent misrepresentation claims, the Court concludes fraudulent misrepresentation claims based on a breach of duty by operation of law are not subject to the economic loss doctrine.[155]

Similarly relying upon *Rinehart*, Judge Kathryn Vratil of this District found—in a case involving gambling software that did not perform as expected—that the economic loss doctrine

---

[152]Case No. 2:16-CV-2759-JAR, 2017 WL 3730475 (D. Kan. Aug. 30, 2017).

[153]*Id*. at *5.

[154]*See id*. at *1–2.

[155]*Id*. at *4 (citations omitted) (quoting and citing *Rinehart*, 305 P.3d at 632–33); *see also Am. Maplan Corp. v. Heibei Quanen High-Tech Piping Co.*, Case No. 17-1075-JTM, 2018 WL 3240970, at *6 (D. Kan. July 3, 2018) (stating that "the Kansas Supreme Court has determined that the economic loss doctrine does not preclude an action for negligent misrepresentation," and "that the rationale in *Rinehart* 'applies equally to fraudulent misrepresentation claims.'" (quoting *Cinema Scene Mktg. & Promotions, Inc.*, 2017 WL 3730475, at *4) (citing *Rinehart*, 305 P.3d 622)).

did not bar the plaintiffs' negligent misrepresentation claim where the contract claim arose from

defendant's alleged failure to provide software and to restore the software to good working

order, as promised in the agreement, but the misrepresentation claim was based on the

defendant's alleged negligence in conveying inaccurate information before plaintiffs entered into

the agreement.[156]

The Penske Defendants and Allstate argue that because Plaintiff's contract with Allstate

was for the sale of "good, reliable" trucks that had been "fleet-maintained," claims arising from

Allstate's and the Penske Defendants' alleged fraudulent and negligent misrepresentation of the

quality or character of the trucks are barred by the economic loss doctrine. The Penske

Defendants rely heavily on the Third Circuit case of *Werwinski v. Ford Motor Company*,[157] in

which the plaintiffs alleged that Ford concealed material information from consumers while

marketing vehicles with defective transmissions.[158] The Third Circuit held that the economic

loss doctrine barred the plaintiffs' fraudulent concealment claims, finding that the plaintiffs were

"unable to explain why contract remedies are inadequate to provide redress when the alleged

misrepresentation relates to the quality or characteristics of the goods sold."[159] As noted by the

Penske Defendants, the Kansas Court of Appeals cited *Werwinski* with approval in *Louisburg*

*Building & Development Co., L.L.C. v. Albright*[160]—a case also relied upon by Allstate— in

holding that "the district court properly applied the economic-loss doctrine to preclude the

Albrights' fraud-in-the-inducement claim, which sought only to turn a standard breach-of-

---

[156]*BHC Dev., L.C. v. Bally Gaming, Inc.*, 985 F. Supp. 2d 1276, 1288 (D. Kan. 2013).

[157]286 F.3d 661 (3d Cir. 2002).

[158]*Id.* at 664.

[159]*Id.* at 679–81.

[160]252 P.3d 597 (Kan. Ct. App. 2011).

contract claim into a tort claim."[161]  However, on remand from the Kansas Supreme Court with

instructions to reconsider the economic loss doctrine in light of *David v. Hett*, the Kansas Court

of Appeals reversed the district court's judgment in favor of the defendant on the fraudulent

inducement claim and remanded the case for further proceedings.[162]

The Court is convinced that *Rinehart* applies here.  While it is true that *Rinehart* does not

involve representations about the quality or characteristics of commercial goods, that case

ultimately turned upon the nature of the tort in question, rather than the goods and/or services at

issue in the contract.  Although the scope of the economic-loss doctrine is still unfolding, the

Court agrees with Plaintiff that the Kansas Supreme Court's decisions in "*David* and *Rinehart*

provide clear guidance."[163]  The Kansas Supreme Court in *Rinehart* based its "decision on the

nature of the negligent misrepresentation tort, which contains its own scope-of-liability

limits,"[164] and the same result appears warranted here.  Thus, Allstate's and the Penske

Defendants' motions to dismiss on the basis of the economic loss doctrine are denied.

### B.     Unjust Enrichment Claim Against Allstate

Allstate cursorily argues for the dismissal of Count XIV, Plaintiff's unjust enrichment

claim, on the basis that quasi-contractual remedies are not available where "an enforceable

---

[161]*Id.* at 624.

[162]*Louisburg Bldg. & Dev. Co., L.L.C. v. Albright*, 281 P.3d 1146, 2012 WL 3289940, at *2 (Kan. Ct. App. Aug. 10, 2012) (unpublished table opinion).  Allstate also cites the case of *Shawnee County, Kansas v. Daimler Trucks North America LLC*, No. 15-4006-RDR-KGS, 2015 WL 1299355 (D. Kan. Mar. 23, 2015), for the argument that "[u]nder the economic loss doctrine, a plaintiff seeking recovery for economic losses only, and not personal injuries or damage to other property, cannot proceed under theories sounding in tort."  Doc. 29 at 13 (quoting *Shawnee Cty., Kan.*, 2015 WL 1299355, at *2).  That case, however, makes no mention of the Kansas Supreme Court's decision in *Rinehart*, nor does it appear to have involved the type of negligent and fraudulent misrepresentation claims at issue here.  *See Shawnee Cty., Kan.*, 2015 WL 1299355, at *1 (stating that the plaintiff alleges claims for negligence, strict liability, breach of warranty, and breach of implied warranty of merchantability and fitness for an intended purpose).

[163]Doc. 40 at 14.

[164]*Rinehart v. Morton Bldgs., Inc.*, 305 P.3d 622, 627 (Kan. 2013).

express contract regulates the relations of the parties with respect to the disputed issue."[165] Plaintiff fails to address Allstate's single-paragraph argument for the dismissal of the unjust enrichment claim, and the Court cannot determine whether Plaintiff missed Allstate's brief argument—which appears under a heading that expressly mentions Counts IX through XIII but *not* Count XIV—or whether Plaintiff simply does not oppose the dismissal of its unjust enrichment claim. Allstate makes no mention of the unjust enrichment claim in its reply brief.

Unjust enrichment falls under the category of quantum meruit and restitution, and these "are not available theories of recovery when a valid, written contract addressing the issue exists."[166] It is true that "our court has dismissed claims premised on quasi-contract theories . . . when the parties do not dispute the existence of a written contract governing the controversy."[167] However, "[t]he Federal Rules of Civil Procedure provide that 'relief in the alternative or of several different types may be demanded,'"[168] and "a party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses."[169]

Plaintiff here alleges in its unjust enrichment claim and elsewhere that Allstate falsely represented the trucks to be good, reliable trucks that had been fleet-maintained. Unjust

---

[165]Doc. 29 at 15 (quoting *Ice Corp. v. Hamilton Sunstrand, Inc*., 444 F. Supp. 2d 1165, 1171 (D. Kan. 2006)).

[166]*Ice Corp*, 444 F. Supp. 2d at 1170 (citing *Britvic Soft Drinks, Ltd. v. ACSIS Techs., Inc.*, No. 01–2243–CM, 2004 WL 1900585, at *2 (D. Kan. June 8, 2004)); *see also Fusion, Inc. v. Neb. Aluminum Castings, Inc.*, 934 F. Supp. 1270, 1275 (D. Kan. 1996) (citations omitted).

[167]*Tronsgard v. FBL Fin. Grp., Inc*., 312 F. Supp. 3d 982, 1008 (D. Kan. 2018) (citing *Fusion, Inc.*, 934 F. Supp. at 1275; *Regal Ware, Inc. v. Vita Craft Corp*., 653 F. Supp. 2d 1146, 1150–51 (D. Kan. 2006)).

[168]*Ice Corp.*, 444 F. Supp. 2d at 1171 (quoting *Cohen v. Lockwood*, No. 02-2246-CM, 2003 WL 21384313, at *3 (D. Kan. June 12, 2003)); *see* Fed. R. Civ. P. 8(a).

[169]*Id*. (quoting *Cohen*, 2003 WL 21384313, at *3); *see also Moore v. Climate Corp*., Case No. 15-4916-DDC-KGS, 2016 WL 4527991, at *7 (D. Kan. Aug. 30, 2016) ("[T]he parties here have not stipulated to the existence of an enforceable contract between plaintiffs and each defendant. So plaintiffs may plead an unjust enrichment claim as an alternative to their breach of contract claim." (citation omitted)).

enrichment may be an available remedy "if the contract is void, unenforceable, rescinded, or waived by the party seeking to recover."[170] At this time, without the benefit of more fulsome briefing on the issue—including briefing on which state's law should apply—the Court declines to dismiss Plaintiff's unjust enrichment claim.[171]

## C.  Negligence Claim Against the Penske Defendants

In the final count of its Complaint, Plaintiff asserts a negligence claim against the Penske Defendants, alleging that as the seller of used trucks, Penske owed future purchasers such as Plaintiff a duty not to misrepresent the quality, condition, or reliability of the trucks it sold, and that the Penske Defendants breached this duty. The Penske Defendants argue that this claim must be dismissed because Plaintiff has failed to demonstrate that the Penske Defendants owed it any such duty. The Penske Defendants contend that no such duty can exist because Plaintiff was not a party to the transaction between Penske Truck Leasing Co., L.P. and Allstate, and because Plaintiff has not specifically alleged that the Penske Defendants intended to make any representation to Plaintiff or intended that Allstate relay any representation to Plaintiff.

Kansas "has adopted the tort of negligent misrepresentation as described in the Restatement (Second) of Torts § 552 (1976)."[172] That Restatement provision provides:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a

---

[170] *Ice Corp.*, 444 F. Supp. 2d at 1171 (citing *Britvic Soft Drinks*, 2004 WL 1900584, at *2); *see also Mendy v. AAA Ins.*, Case No. 17-2322-DDC-GLR, 2017 WL 4422648, at *7 (D. Kan. Oct. 5, 2017) (citing *Ice Corp.*, 444 F. Supp. 2d at 1170–71).

[171] "Kansas follows the factors set forth in the Restatement (Second) of Conflict of Law, § 221 to determine the law governing a quasi-contract claim of unjust enrichment." *Johnson v. Simonton Bldg. Prods., Inc.*, No. 08-2198-CM-DJW, 2011 WL 251435, at *4 (D. Kan. Jan. 26, 2011) (citations omitted); *see also Sunbird Air Servs., Inc. v. Beech Aircraft Corp.*, Civ. A No. 89-2181-V, 1992 WL 193661, at *7 (D. Kan. July 15, 1992). Allstate makes no argument regarding which state's law should apply in deciding its motion to dismiss Plaintiff's unjust enrichment claim.

[172] *Rinehart v. Morton Bldgs., Inc.*, 305 P.3d 622, 630 (Kan. 2013) (citing *Mahler v. Keenan Real Estate, Inc.*, 876 P.2d 609 (Kan. 1994)). Under the choice-of-law analysis set forth above in Part III.A.1., Kansas law applies to Plaintiff's negligence claim against the Penske Defendants.

pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.[173]

Contrary to the Penske Defendants' assertion, Plaintiff does allege that the Penske Defendants made misrepresentations to Allstate with the knowledge that Allstate would resell the trucks at issue to Plaintiff.[174] Further, the Comment on Subsection (2) provides:

[I]it is not required that the person who is to become the plaintiff be identified or known to the defendant as an individual when the information is supplied. It is enough that the maker of the representation intends it to reach and influence either a particular person or persons, known to him, or a group or class of persons, distinct from the much larger class who might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it. It is enough, likewise, that the maker of the representation knows that his recipient intends to transmit the information to a similar person, persons or group. It is sufficient, in other words, insofar as the plaintiff's identity is concerned, that the maker supplies the information for repetition to a certain group or class of persons and that the plaintiff proves to be one of them, even though the maker

---

[173]Restatement (Second) of Torts § 552 (1976).

[174]Doc. 1 ¶¶ 25, 97–100, 265.

> never had heard of him by name when the information was
> given.[175]

The Court agrees with Plaintiff that it has sufficiently alleged a duty under § 552.  Plaintiff has alleged that the Penske Defendants knew that Plaintiff was a "person or one of a limited group of persons for whose benefit and guidance [the Penske Defendants] intend[ed] to supply the information or [knew] that [Allstate] intend[ed] to supply it."[176]  The Penske Defendants' motion to dismiss is denied as to Plaintiff's negligence claim.

### D.  Sufficiency of Fraud Allegations

Both Allstate and the Penske Defendants move to dismiss Plaintiff's fraud claims against them on the basis that Plaintiff has not pleaded those claims with the particularity required by Fed. R. Civ. P. 9(b).[177]  Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Rule 9(b)'s heightened pleading requirements allow "the defending party to prepare an effective response to charges of fraud and to protect the defending party from unfounded charges of wrongdoing which might injure its reputation and goodwill."[178]

Rule 9(b) does not, however, supplant the principles of notice pleading under Rule 8, "which calls for pleadings to be 'simple, concise, and direct, . . . and to be construed as to do

---

[175]Comment h to Restatement (Second) of Torts § 552.

[176]Restatement (Second) of Torts § 552(2)(a); *see also Rinehart*, 305 P.3d at 630.

[177]*See Seattle-First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir. 1986) (citation omitted) (motion to dismiss for failure to satisfy Rule 9(b) requirements is treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim).

[178]*Black & Veatch Int'l Co. v. Wartsila NSD N. Am., Inc.*, No. Civ.A. 97-2556-GTV, 1998 WL 264738, at *2 (D. Kan. May 21, 1998) (quoting *Cattlemen's Livestock Auction, Inc. v. Walrod*, No. Civ.A. 95-2404-EEO, 1996 WL 223918, at *1 (D. Kan. Apr. 3, 1996)).

substantial justice.'"[179] "In cases with allegations of fraud or mistake, the court reads the two

rules in conjunction."[180] Thus, to satisfy Rule 9(b), "a complaint alleging fraud [must] 'set forth

the time, place and contents of the false representation, the identity of the party making the false

statements and the consequences thereof.'"[181] "In other words, the alleging party must specify

the 'who, what, where, and when of the alleged fraud.'"[182] Further, "[w]hen allegations of fraud

implicate an agency relationship, courts have elevated the pleading standard for agency to that

of Rule 9(b)."[183]

Allstate argues that Plaintiff has failed to plead fraud with the required particularity with

respect to its claims for fraudulent concealment, fraud in the inducement, and deceptive trade

practices.[184] While Plaintiff alleges that Allstate represented that the trucks at issue were good,

reliable trucks that had been fleet-maintained, it is true that the Complaint lacks allegations

concerning the who, where, and when of this alleged fraud as required by Rule 9(b).[185] In

response to Allstate's motion to dismiss, Plaintiff argues that it has provided Allstate with

sufficient notice of its fraud claims to allow Allstate to defend against them, but requests that it

---

[179] *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (citations omitted).

[180] *Black & Veatch Int'l Co.*, 1998 WL 264738, at *2 (citing *Midwest Grain Prods. v. Envirofuels Mktg., Inc.*, No. Civ.A. 95-2355-EEO, 1995 WL 769265, at *1 (D. Kan. Dec. 4, 1995)).

[181] *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006) (alteration in original) (quoting *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000), *cert. denied*, 531 U.S. 926 (2000)), *cert. denied*, 549 U.S. 1209 (2007).

[182] *Lee v. Kan. State Univ.*, No. 12-CV-2638-JAR-DJW, 2013 WL 2476702, at *11 (D. Kan. June 7, 2013) (citation omitted).

[183] *Wood v. LP Conversions, Inc.*, No. 14-2228-CM, 2014 WL 5430243, at *4 (D. Kan. Oct. 24, 2014) (citing *Lachmund v. ADM Inv'r Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999); *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 916 (8th Cir. 2001)).

[184] *Lopez v. United Prop. & Cas. Ins. Co.*, 197 F. Supp. 3d 944, 951 (S.D. Tex. 2016) ("In federal court, claims under the Texas Deceptive Trade Practices Act are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." (citations omitted)).

[185] In affidavits filed in connection with the jurisdictional issues, Plaintiff seemingly attributes these statements to Caldwell and indicates that the statements were made by Caldwell between November 1, 2016 when he met face-to-face with Shirey in Olathe, Kansas and November 29, 2016, when Plaintiff signed the purchase order form; and that Caldwell made statements by phone and email as well, during this time period preceding the contract.

be allowed to amend its Complaint should the Court find otherwise. Plaintiff states that if allowed to amend, it will include the additional factual allegations set forth in Shirey's affidavit, including the identity of the person who made the allegedly fraudulent statements, the location and manner in which the statements were made, and the date on which the statements were made.

The Court finds Plaintiff's present fraud allegations insufficient to satisfy Rule 9(b) but grants Plaintiff leave to amend, which should be "freely given when justice so requires" under Fed. R. Civ. P. 15(a)(2). A court is generally only justified in denying leave to amend upon a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."[186] In response to Plaintiff's request for leave to amend, Allstate makes no argument regarding undue delay, bad faith, undue prejudice, or futility. Rather, Allstate reiterates that the Complaint on its face does not currently meet the requirements of Rule 9(b) and asks that Plaintiff's fraud claims be dismissed as they are currently pled. The Court therefore dismisses Counts IX, X, and XIII with leave to amend.

As to the Penske Defendants, Plaintiff alleges the "what" of the alleged fraud—that the Penske Defendants represented to Allstate (which, in turn, represented to Plaintiff) that the trucks were good, reliable trucks that had been fleet-maintained—but does not allege who made these representations or when, where, or how that individual did so. Instead, Plaintiff bases its fraud allegations "on information and belief," and argues that it has no ability to identify the particular

---

[186] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

person working for the Penske Defendants who communicated with Allstate about the condition of these trucks, the moment it happened, or the medium used for this communication.

Plaintiff contends that this lack of particularity is permissible under *Scheidt v. Klein*,[187] in which the Tenth Circuit held that "[a]llegations of fraud may be based on information and belief when the facts in question are peculiarly within the opposing party's knowledge and the complaint sets forth the factual basis for the plaintiff's belief."[188]  However, when pleading fraud based on information and belief, "a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard."[189]  "[T]he question is whether such [fraud] allegations are supported by specific facts asserted by the Complaint."[190]

The Penske Defendants argue that Plaintiff has not met this burden, and point out that the bills of sale expressly state that "the purchaser acknowledges that it has inspected the vehicle(s) transferred hereby and is not relying on any representations of seller or PTL Fleet, and that the vehicle(s) is (are) sold as-is in its (their) present condition."[191]  Thus, the Penske Defendants argue, they are "not aware of the specific circumstances that Plaintiff believes render the disclaimers in the bills invalid."[192]  Plaintiff counters that Allstate will have no trouble gathering information from witnesses and documents about the alleged fraud because it has provided the

---

[187]956 F.2d 963 (10th Cir. 1992).

[188]*Id.* at 967 (citing *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir. 1990); *New England Data Servs., Inc. v. Becher,* 829 F.2d 286, 288–89 (1st Cir. 1987); *In re VMS Secs. Litig.,* 752 F. Supp. 1373, 1391–92 (N.D. Ill. 1990)).

[189]*Wexner,* 902 F.2d at 172 (citations omitted); *see also Koch v. Koch Indus.*, 203 F.3d 1202, 1237 (10th Cir. 2000), *cert. denied,* 531 U.S. 926 (2000).

[190]*Moore v. Kobach*, 359 F. Supp. 3d 1029, 1040–41 (D. Kan. 2019) (detailing specific facts asserted in complaint to support fraud allegations based on information and belief); *see also Jackson-Cobb v. Sprint United Mgmt.*, 173 F. Supp. 3d 1139, 1148–49 (D. Colo. 2016) (noting that while the Tenth Circuit permits allegations based on information and belief in certain contexts when the complaint sets forth the factual basis for the belief, conclusory factual allegations, without more, are insufficient (citing *Scheidt*, 956 F.2d at 967)).

[191]Doc. 25-1 at 2.

[192]Doc. 42 at 3.

VIN numbers for the trucks at issue and identified November 2016 as the month of the sale, and because the Penske Defendants have attached to their briefing "what [they say] are bills of sale for the trucks Plaintiff identified in the Complaint."[193]

The Court finds that Plaintiff's Complaint does not currently contain a sufficient factual basis to support a strong inference of fraud as to the Penske Defendants. Thus, Counts XV and XVI are dismissed, without prejudice; and Plaintiff may follow the procedure for seeking leave to amend under D. Kan. Rule 15.1.

**IT IS THEREFORE ORDERED BY THE COURT** that the Navistar Defendants' Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2) **(Doc. 13) is denied**. Allstate's motion to dismiss **(Doc. 28) is granted in part and denied in part**. Allstate' Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is denied; Allstate's Rule 12(b)(6) motion to dismiss for failure to state a claim is granted only as to Counts IX, X and XIII for failure to plead fraud with the particularity required by Rule 9(b), and **Plaintiff is granted leave to amend Counts IX, X and XIII.** The Penske Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim **(Doc. 24) is granted in part and denied in part**; the motion is granted only as to **Counts XV and XVI, which are dismissed without prejudice**, for failure to sufficiently plead fraud under Rule 9(b), without prejudice; **and Plaintiff may follow the procedure for seeking leave to amend Counts XV and XVI under D. Kan. Rule 15.1.**

**IT IS FURTHER ORDERED THAT** Plaintiff shall file an amended complaint pleading fraud with the particularity required by Fed. R. Civ. P. 9(b) in Counts IX, X, XIII and any motion for leave to amend Counts XV and XVI by **thirty (30) days from the date of this Order**. If

---

[193]Doc. 37 at 10–11.

Plaintiff does not timely file an amended complaint, Counts IX, X and XIII will be dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: September 26, 2019

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE