# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

FREEDOM TRANSPORTATION, INC.,

    **Plaintiff,**

    v.

NAVISTAR INTERNATIONAL CORPORATION, ET AL.,

    **Defendants.**

Case No. 2:18-CV-02602-JAR-KGG

## MEMORANDUM AND ORDER

Plaintiff Freedom Transportation, Inc. brings this action alleging a variety of claims against Defendants Navistar International Corporation and Navistar, Inc. ("Navistar Defendants"), Allstate Fleet and Equipment Sales of Houston, Inc. ("Allstate"), and Penske Truck Leasing Co., L.P., Penske Truck Leasing Corporation, and Penske Logistics LLC ("Penske Defendants") relating to Plaintiff's purchase of six allegedly defective box trucks for commercial use. In a prior Memorandum and Order dated September 26, 2019, the Court denied the Navistar Defendants' motion to dismiss for lack of personal jurisdiction.[1] The Court granted in part and denied in part motions to dismiss filed by Allstate and the Penske Defendants, with leave to amend as to Plaintiff's fraud claims against Allstate.[2] Plaintiff filed an Amended Complaint on October 1, 2019, which is unchanged as to its claims against the Navistar Defendants.

The Navistar Defendants now move to dismiss Plaintiff's fraud claims against them, specifically Plaintiff's claims for fraudulent concealment (Count II), fraud in the inducement

---

[1] Doc. 48.

[2] *Id.* at 49–51.

(Count III), and consumer fraud and deceptive trade practices, including violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1, *et seq*. (Count V).[3] The motion (Doc. 55) is fully briefed and the Court is prepared to rule. For the reasons set forth below, the Court grants the Navistar Defendants' motion.

**I. Legal Standards**

**A. Rule 12(b)(6) Standard**

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level"[4] and must include "enough facts to state a claim for relief that is plausible on its face."[5] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[6] The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[7] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[8] Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[9]

---

[3]Amended Complaint, Doc. 49 at 18–22. Plaintiff also brings claims against the Navistar Defendants for breach of implied warranty of merchantability (Count I) and negligence (Count IV).

[4]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004)).

[5]*Id*. at 570.

[6]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[7]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[8]*Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[9]*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[10] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[11] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[12] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13]

**B.      Rule 9(b) Standard**

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Rule 9(b)'s heightened pleading requirements allow "the defending party to prepare an effective response to charges of fraud and to protect the defending party from unfounded charges of wrongdoing which might injure its reputation and goodwill."[14]

Rule 9(b) does not, however, supplant the principles of notice pleading under Rule 8, "which calls for pleadings to be 'simple, concise, and direct, . . . and to be construed as to do

---

[10]*Id.* (quoting *Twombly*, 550 U.S. at 555).

[11]*Id.* at 678–679.

[12]*Id.* at 679.

[13]*Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

[14]*Black & Veatch Int'l Co. v. Wartsila NSD N. Am., Inc.*, No. Civ.A. 97-2556-GTV, 1998 WL 264738, at *2 (D. Kan. May 21, 1998) (quoting *Cattlemen's Livestock Auction, Inc. v. Walrod*, No. Civ.A. 95-2404-EEO, 1996 WL 223918, at *1 (D. Kan. Apr. 3, 1996)).

substantial justice.'"[15] "In cases with allegations of fraud or mistake, the court reads the two rules in conjunction."[16] Thus, to satisfy Rule 9(b), "a complaint alleging fraud [must] 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'"[17] In other words, the alleging party must specify the "'who, what, where, and when of the alleged fraud.'"[18] A motion to dismiss for failure to satisfy Rule 9(b) pleading requirements is treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim.[19]

## II. Factual Allegations

The following facts are drawn from Plaintiff's Amended Complaint and are assumed true for the purposes of this ruling. Plaintiff is a shipping and logistics company founded in May 2013 by Natasha and Daniel Shirey and based in Olathe, Kansas. In November 2016, Plaintiff purchased six International DuraStar 4300 trucks in order to meet the needs and specifications of a contract requiring Plaintiff to perform shipping and logistics services. Plaintiff purchased the trucks from Defendant Allstate after Allstate, acting as a broker, acquired the trucks from the Penske Defendants. The Navistar Defendants played no role in either transaction. Upon purchase, Plaintiff picked up the trucks from various Penske locations and drove them to Plaintiff's headquarters in Kansas.

---

[15]*Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (citations omitted).

[16]*Black & Veatch Int'l Co.*, 1998 WL 264738, at *2 (citing *Midwest Grain Prods. v. Envirofuels Mktg., Inc.*, No. Civ.A. 95-2355-EEO, 1995 WL 769265, at *1 (D. Kan. Dec. 4, 1995)).

[17]*Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006) (alteration in original) (quoting *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000), *cert. denied*, 531 U.S. 926 (2000)), *cert. denied*, 549 U.S. 1209 (2007).

[18]*Jamieson v. Vatterott Educ. Ctr., Inc.*, 473 F. Supp. 2d 1153, 1156 (D. Kan. 2007) (*quoting Plastic Packaging Corp. v. Sun Chem. Corp.*, 136 F. Supp. 2d 1201, 1203 (D. Kan. 2001)).

[19]*Seattle-First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir. 1986) (citation omitted).

4

These International DuraStar 4300 trucks were manufactured by Navistar, Inc. in 2010 and 2011 and featured the MaxxForce engine, which Navistar, Inc. also designed and manufactured. The MaxxForce engine has an exhaust-gas-recirculation-only ("EGR-only") emission system, which recirculates engine exhaust gas back into the engine to be re-combusted. In contrast, other commercial truck manufacturers in North America use a combination of EGR and selective catalytic reduction, which requires injecting a urea-based chemical after-treatment into the exhaust gas once it leaves the engine, thereby neutralizing and/or reducing harmful emissions.

In public statements, press releases, and advertising, the Navistar Defendants touted the MaxxForce engine's unique EGR-only technology as providing superior fluid economy and represented that the engines would be certified under the EPA's 2010 emission standards. But the engines never reached the EPA's 2010 emission standards threshold necessary for certification. Based on the results of extensive pre-market testing that is standard in the industry, Navistar knew that the engines were never going to meet the EPA's standards using EGR-only technology.

Further, Navistar's EGR-only emission system causes widespread engine damage, repeated engine failures, and decreased fuel efficiency. One of the most significant problems with the EGR-only emission system is that the continuous recirculation of exhaust gas back into the engine reduces the engine's efficiency, causing it to overheat and producing excessive soot inside the engine. The Navistar Defendants also knew about these problems and concealed this information from the public and from Plaintiff. By mid-2011, warranty claims for the engines were significantly increased, which the Navistar Defendants also concealed. The Navistar

Defendants failed to properly repair the EGR-only systems during and/or outside the warranty period.

By February 2012, the Navistar Defendants ran out of "banked" EPA emissions credits, which they had been using to continue to sell MaxxForce engines, and were informed by the EPA that they would face substantial fines for shipping thousands of "back-dated" engines. Nevertheless, the Navistar Defendants continued to manufacture and distribute MaxxForce-powered International DuraStar 4300 trucks while making false representations to the public and to Plaintiff regarding their performance capabilities, reliability, EPA certification, and Navistar's commitment to the MaxxForce engine. The Navistar Defendants made such false representations though public statements, press releases, and nearly $30 million per year in advertising, while omitting and concealing the defective condition of the trucks.

In July 2012, the Navistar Defendants announced that they were abandoning the EGR-only system, and beginning in March 2013, they began retiring the MaxxForce engine. By 2015, the MaxxForce engine was no longer used in International DuraStar 4300 trucks.

The six trucks Plaintiff purchased in November 2016 turned out to be defective and failed well before their intended and expected useful life, causing Plaintiff lost revenue, lost business opportunities, and other damages. Within weeks of picking up the trucks, the trucks began experiencing breakdowns, ERG emission system failures, and engine failures. Had Plaintiff been told about the trucks' defective condition, including the defective EGR-only engine system, Plaintiff would not have purchased the them.

**III. Discussion**

The Navistar Defendants argue that Plaintiff has failed to plead fraud with the particularity required by Fed. R. Civ. P. 9(b) with respect to its claims for fraud in the inducement, fraudulent concealment, and violation of the ICFA. The Navistar Defendants further argue that Plaintiff fails to state plausible claims for relief as required by *Twombly* and *Iqbal*, in part because Plaintiff had no corporate existence until *after* the Navistar Defendants announced that they were ceasing use of EGR-only technology and, therefore, it would have been logically and temporally impossible for Plaintiff to have relied on representations about the trucks at issue before Plaintiff's founding.

In response, Plaintiff contends that it has adequately pled fraud, but argues that if the Court finds it has failed to do so, it should be granted leave to amend to add allegations relating to alleged fraudulent statements and/or concealment in 2016, just prior to the sale of the trucks at issue. These additional allegations are set forth in affidavits of Dan and Natasha Shirey attached to Plaintiff's response.

**A. Fraudulent Inducement**

Plaintiff contends that the Navistar Defendants induced it to purchase the trucks at issue by making false and fraudulent representations about their quality, reliability, and performance. The elements of a claim for fraudulent inducement under Kansas law[20] include that:

---

[20]In a diversity case, the court applies the substantive law of the forum state, including its choice of law rules. *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1170 (10th Cir. 2010) (citation omitted). Kansas courts have consistently applied the doctrine of *lex loci delicti* to determine choice of law in tort cases. *See Brown v. Kleen Kut Mfg. Co.*, 714 P.2d 942, 944 (Kan. 1986) (citing *McDaniel v. Sinn*, 400 P.2d 1018 (Kan. 1965)); *Ling v. Jan's Liquors*, 703 P.2d 731, 735 (Kan. 1985) (citations omitted); *Ritchie Enters. v. Honeywell Bull, Inc.*, 730 F. Supp. 1041, 1046 (D. Kan. 1990) (citations omitted). Under this rule, the law of the state where the tort occurred controls. *Brown*, 714 P.2d at 944. However, "[w]hen a person sustains loss by misrepresentation, 'the place of wrong is where the loss is sustained,' not where the misrepresentations were made." *Atchison Casting Corp. v. Dofasco, Inc.*, 889 F. Supp. 1445, 1456 (D. Kan. 1995) (quoting *Raymark Indus., Inc. v. Stemple*, 714 F. Supp. 460, 464 (D. Kan. 1988)). "The law of the place where the 'effects' of a misrepresentation were felt controls." *Id.* at 1456 (quoting *Seitter v. Schoenfeld*, 678 F. Supp. 831, 836 (D. Kan. 1988)). Because the effects of the Navistar

> (1) The defendant made false representations as a statement of existing and material fact; (2) the defendant knew the representations to be false or made them recklessly without knowledge concerning them; (3) the defendant made the representations intentionally for the purpose of inducing another party to act upon them; (4) the other party reasonably relied and acted upon the representations; and (5) the other party sustained damages by relying upon the representations.[21]

In asserting a common-law fraudulent inducement claim, Plaintiff must first clear the hurdle of Rule 9(b) by alleging with adequate particularity the who, what, where, and when of the alleged fraud.[22]

Plaintiff's allegations here fail to satisfy the particularity requirements of Rule 9(b). Plaintiff vaguely alleges multiple times that the Navistar Defendants misrepresented the quality, condition, reliability, fluid economy, and anticipated EPA emissions certification of the trucks through advertising, public statements, and press releases. However, Plaintiff does not identify any specific communication, when and where it was made, or its contents.

The Navistar Defendants further argue that because Plaintiff alleges that the Navistar Defendants announced the abandonment of EGR-only technology in 2012—four years before Plaintiff purchased the trucks at issue and a year before Plaintiff was even founded—Plaintiff has failed to allege facts that state a plausible claim for relief under Rule 8. Under Kansas law, a fraudulent misrepresentation claim requires that the injured party's reliance be "reasonable, justifiable and detrimental."[23] In the Court's view, the preliminary issue here is that Plaintiff has

---

Defendants' alleged fraud were felt by Plaintiff in Kansas, Kansas law applies. *See Ritchie Enters*., 730 F. Supp. at 1046 (stating that under the doctrine of *lex loci delicti*, "Kansas law would govern the plaintiff's fraud claim").

[21]*Stechschulte v. Jennings*, 298 P.3d 1083, 1096 (Kan. 2013) (citing *Chism v. Protective Life Ins. Co*., 234 P.3d 780 (Kan. 2010); *Kelly v. VinZant*, 197 P.3d 803 (Kan. 2008); PIK Civ. 4th 127.40); *see also Raynor Mfg. Co. v. Raynor Door Co., Inc*., 225 P.3d 780 (Table), 2010 WL 744801, at *12 (Kan. Ct. App. Feb. 26, 2010).

[22]*Jamieson v. Vatterott Educ. Ctr., Inc*., 473 F. Supp. 2d 1153, 1156 (D. Kan. 2007) (citation omitted).

[23]*Wichita Clinic, P.A. v. Columbia/HCA Healthcare, Corp*., 45 F. Supp. 2d 1164, 1198 (D. Kan. 1999) (quoting *Slaymaker v. Westgate State Bank*, 739 P.2d 444 (Kan. 1987)).

failed to allege with particularity *any* affirmative misrepresentation upon which it could have relied.[24] While Plaintiff counters that it "could hypothetically rely on statements Navistar made before Plaintiff's existence,"[25] its Amended Complaint does not specifically identify any such statement. Plaintiff's common-law fraudulent inducement claim must be dismissed for failure to plead fraud with the particularity required by Rule 9(b).

### B. Fraudulent Concealment

To prevail on a common-law claim of fraud by silence or fraudulent concealment, a plaintiff must show that:

> (1) The defendant had knowledge of material facts that the plaintiff did not have and could not have discovered by the exercise of reasonable diligence; (2) the defendant was under an obligation to communicate the material facts to the plaintiff; (3) the defendant intentionally failed to communicate the material facts to the plaintiff; (4) the plaintiff justifiably relied on the defendant to communicate the material facts to the plaintiff; and (5) the plaintiff sustained damages as a result of the defendant's failure to communicate the material facts to the plaintiff.[26]

Although the particularity requirement may be somewhat relaxed with respect to the who, what, where, and when for a fraudulent concealment claim, "the plaintiff should allege with particularity any 'facts that would have prevented it from knowing [the concealed fact] and must also allege that its ignorance was not the result of its own lack of diligence.'"[27]

---

[24]*See, e.g., Palmer v. Brown*, 752 P.2d 685, 690 (Kan. 1988) (affirming trial court's dismissal of fraud claim where plaintiff failed to identify fraudulent inducements and therefore did "not allege fraud with sufficient particularity to support her claims of fraud and detrimental reliance").

[25]Doc. 70 at 8.

[26]*Stechschulte*, 298 P.3d at 1097 (citing *Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman*, 978 P.2d 922 (1999)) (other citation omitted); *see also Kastner v. Guenther*, No. 10-1013-EFM, 2010 WL 4624037, at *5 (D. Kan. Nov. 5, 2010).

[27]*Near v. Crivello*, 673 F. Supp. 2d 1265, 1280 (D. Kan. 2009) (*citing Zurn Constructors, Inc. v. B.F. Goodrich Co*., 746 F. Supp. 1051, 1056 (D. Kan. 1990); *Evans v. Pearson Enters*., 434 F.3d 839, 851 (6th Cir. 2006)).

The Navistar Defendants argue that Plaintiff has alleged no facts showing that it was prevented from knowing the allegedly concealed information. Specifically, the Navistar Defendants argue that Plaintiff concedes in its Amended Complaint that the Navistar Defendants had acknowledged problems with EGR-only technology years before Plaintiff purchased the trucks at issue. Plaintiff does expressly allege that "[i]n July 2012, Navistar finally announced that it was abandoning its EGR-only system and would be adopting the same SCR technologies that its competitors had been using."[28]

Plaintiff argues, however, that the fact that the Navistar Defendants announced that they would discontinue using this technology does not mean that they publicly revealed the defective nature of the 2010 and 2011 trucks. Plaintiff argues that on the contrary, the Navistar Defendants continued to conceal material information and sell trucks that used the abandoned, problematic EGR-only technology. In so arguing, Plaintiff points in its response brief to an article appearing online in August 2012, in which Navistar's president stated that despite a court judgment requiring Navistar to pay an EPA noncompliance penalty, customers should not hesitate to purchase an EGR-only MaxxForce-equipped truck. The portion of that article quoted by Plaintiff states:

> "The judge didn't void the trucks," he said of the recent appellate court ruling. "Check out the Website about trucks sold under the interim rule. Nothing will happen. And as for used truck values? We feel the secondary market will be very receptive to a truck built without SCR. Our MaxxForce fuel economy is great. Our performance is great. And we have more than 50,000 of those engines out there."[29]

---

[28]Doc. 49 ¶ 57.

[29]Doc. 70 at 7 (citing Jack Roberts, *Navistar Devises Plan to Counter Losing EGR Gamble*, COMMERCIAL CARRIER JOURNAL (Aug. 23, 2012), https://www.ccjdigital.com/navistar-devises-plan-to-counter-losing-egr-gamble/).

The Court questions Plaintiff's reliance on this article to show that it was prevented from knowing about the allegedly defective engines because—as the Navistar Defendants point out—in addition to the above-quoted language, the article also discusses reports of reliability issues with MaxxForce-equipped trucks. If Plaintiff had seen this article prior to purchasing the trucks, it surely also would have noted the portion concerning purported reliability problems with the MaxxForce engine.

In any event, Plaintiff does not reference this article in its Amended Complaint, and therefore it is not a part of the pleadings properly considered on a motion to dismiss.[30] Nor does Plaintiff seek leave to amend to add allegations relating to this article or formally request that the Court take judicial notice of it. Thus, the Court does not consider this article in deciding whether Plaintiff has adequately pled its fraudulent concealment claim.

The Court finds that Plaintiff's Amended Complaint fails to allege with particularity that Plaintiff's ignorance regarding the trucks' potential performance and reliability problems was not the result of its own lack of diligence. Plaintiff is a shipping and logistics business. Under the circumstances present here and in light of the totality of Plaintiff's allegations concerning the retirement of EGR-only technology beginning in 2013, Plaintiff's allegations that it "could not have discovered this defective condition with reasonable diligence," and that the defective condition of the trucks "was not easily discoverable by consumers," are insufficient to satisfy its burden to plead the elements of fraud by omission with particularity.[31]

---

[30]*See Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991) ("When ruling on a Rule 12(b)(6) motion, the district court must examine only the plaintiff's complaint. The district court must determine if the complaint alone is sufficient to state a claim; the district court cannot review matters outside of the complaint.") (citing *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)); *Mas Tec N. Am., Inc. v. Allegiance Commc'ns, LLC*, No. 06-02296-JWL, 2006 WL 3350712, at *1 (D. Kan. Nov. 17, 2006).

[31]Doc. 49 at ¶¶ 125–126.

Additionally, Plaintiff does not plead facts necessary to support that the Navistar Defendants were under an obligation to communicate material facts to Plaintiff. "A necessary element of fraud by silence is that the defendant was under an obligation to communicate material facts to the plaintiff."[32] In deciding whether a duty to disclose exists, the court must consider the facts and circumstances of each case.[33] Under Kansas law, courts hold that "a duty to disclose may arise in two situations: (1) when a disparity of bargaining power or of expertise exists between two contracting parties; or (2) the parties are in a fiduciary relationship with one another."[34]

The second situation may arise where:

> [a] fiduciary relationship imparts a position of peculiar confidence placed by one individual in another. A fiduciary is a person with a duty to act primarily for the benefit of another. A fiduciary is in a position to have and exercise, and does have and exercise influence over another. A fiduciary relationship implies a condition of superiority of one of the parties over the other. Generally, in a fiduciary relationship, the property, interest or authority of the other is placed in the charge of the fiduciary.[35]

The "conscious assumption of the alleged fiduciary duty is a mandatory element under Kansas law."[36] "The Supreme Court of Kansas has cautioned against an approach which would unfairly 'convert ordinary day-to-day business transactions into fiduciary relationships where none were intended or anticipated.'"[37]

---

[32]*Great Plains Christian Radio, Inc. v. Cent. Tower, Inc*., 399 F. Supp. 2d 1185, 1195 (D. Kan. 2005) (citing *DuShane v. Union Nat'l Bank*, 576 P.2d 674, 678–79 (Kan. 1978)).

[33]*See Ensminger v. Terminix Int'l Co*., 102 F.3d 1571, 1574 (10th Cir. 1996).

[34]*N. Ala. Fabricating Co., Inc. v. Bedeschi Mid-West Conveyor Co., LLC*, Case No. 16-2740-DDC-TJJ, 2018 WL 2198638, at *17 (D. Kan. May 14, 2018) (citing *DuShane*, 576 P.2d at 679).

[35]*Denison State Bank v. Madeira*, 640 P.2d 1235, 1241 (Kan. 1982) (citation omitted).

[36]*Rajala v. Allied Corp*., 919 F.2d 610, 615 (10th Cir. 1990) (citing *Hotmar v. Lowell H. Listrom & Co., Inc*., 808 F.2d 1384, 1387 n.3 (10th Cir. 1987)) (other citation omitted).

[37]*Id*. (citing *Denison State Bank*, 640 P.2d at 1243).

The Court finds no relationship giving rise to a duty to disclose on the facts alleged in the Amended Complaint—the Navistar Defendants played no role in either transaction involving the trucks at issue and had no contract or relationship with Plaintiff, fiduciary or otherwise. Given the lack of any relationship between the parties, and Plaintiff's failure to allege facts showing that it could not have discovered the alleged defective condition of the trucks through due diligence, the Court finds that Plaintiff's fraudulent concealment claim must be dismissed.

### C.     Illinois Consumer Fraud and Deceptive Business Practices Act

"To state a claim in a private action under the [ICFA], a plaintiff must allege: (1) the defendant's deception; (2) the defendant intended the plaintiff rely on that deception; (3) the deception occurred in commerce; (4) the plaintiff suffered actual damage; and (5) the deception [proximately] caused the damage."[38] "[T]he Illinois Supreme Court has repeatedly held that, unlike a claim for common law fraud, reliance is not required to establish a consumer fraud claim."[39] However, the ICFA "does require proof of causation which in practice is similar to reliance."[40]

Where a plaintiff alleges deceptive practices under the ICFA as opposed to unfair practices, it "must allege the facts suggesting a deceptive practice with particularity."[41] "While the precise level of particularity required under Rule 9(b) depends upon the facts of the case, the

---

[38]*Aliano v. Louisville Distilling Co.*, LLC, 115 F. Supp. 3d 921, 929–30 (N.D. Ill. 2015) (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005); *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1195 (Ill. App. Ct. 2008)); *see also ABN AMRO, Inc. v. Capital Intern., Ltd.*, 595 F. Supp. 2d 805, 848–49 (N.D. Ill. 2008).

[39]*Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 576 (7th Cir. 2001) (collecting cases).

[40]*Davidson v. Apple, Inc.*, Case No. 16-CV-04942-LHK, 2018 WL 2325426, at *15 (N.D. Cal. May 8, 2018) (citing *Mednick v. Precor, Inc.*, 320 F.R.D. 140, 150 (N.D. Ill. 2017)).

[41]*Aliano*, 115 F. Supp. 3d at 930 (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737–38 (7th Cir. 2014); *Sefton v. Toyota Motor Sales U.S.A., Inc.*, No. 09 C 3787, 2010 WL 1506709, at *4–5 (N.D. Ill. Apr. 14, 2010)); *see also Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 916 (N.D. Ill. 2013) ("Claims brought pursuant to the ICFA . . . are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b).") (citations omitted)).

13

pleading 'ordinarily requires describing the who, what, when, where, and how of the fraud.'"[42]

The parties here agree that Plaintiff's ICFA claim sounds in deception rather than unfair practices.[43] Thus, Plaintiff must allege any deceptive practice with particularity in compliance with Rule 9(b). For the same reasons set forth above with regard to Plaintiff's common-law claim, Plaintiff's fraudulent inducement allegations under the ICFA are insufficient to satisfy Rule 9(b).

Plaintiff's ICFA count also includes allegations of fraudulent omissions and concealment. However,

> [a]n "omission" under the ICFA is an omission from a communication, not a general failure to disclose. . . . [T]he Illinois Supreme Court [has] held that "to maintain an action under the Act, the plaintiff must actually be deceived by a statement or omission that is made by the defendant," and "[i]f there has been no communication with the plaintiff, there have been no statements and no omissions. . . . A consumer cannot maintain an action under the Illinois Consumer Fraud Act when the plaintiff does not receive, directly or indirectly, communication or advertising from the defendant."[44]

Plaintiff claims that the Navistar Defendants omitted material information from advertising, public statements, and press releases, but has not alleged that it received any particular communication from the Navistar Defendants. The Supreme Court of Illinois has emphasized that "[i]f there has been no communication with the plaintiff, there have been no statements and no omissions. In such a situation, a plaintiff cannot prove proximate cause."[45] Thus, whether viewed as a failure to plead fraud with the particularity required by Rule 9(b) or as a failure to

---

[42]*Camasta*, 761 F.3d at 737 (quoting *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)).

[43] Doc. 56 at 10; Doc. 70 at 10.

[44]*Darne v. Ford Motor Co*., No. 13 C 03594, 2015 WL 9259455, at *9 (N.D. Ill. Dec. 18, 2015) (fourth alteration in original) (quoting *De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009)) (citing *Ciszewski v. Denny's Corp*., No. 09C5355, 2010 WL 1418582, at *3 (N.D. Ill. Apr. 7, 2010)).

[45]*De Bouse*, 922 N.E.2d at 316.

adequately allege the proximate cause element of a claim under the ICFA, Plaintiff's failure to identify any communication it received is fatal to its statutory consumer fraud claim.[46]

### D. Request for Leave to Amend

Plaintiff argues that should the Court find that its fraud claims lack the particularity required by Rule 9(b), the Court should grant it leave to amend to add the additional allegations set forth in affidavits offered by Plaintiff's owners, Natasha and Dan Shirey. Leave to amend should be "freely given when justice so requires" under Fed. R. Civ. P. 15(a)(2). A court is generally only justified in denying leave to amend upon a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."[47]

"A court may deny a motion to amend as futile if the proposed amendment would not withstand a motion to dismiss or if it fails to state a claim upon which relief may be granted."[48] In response to Plaintiff's request for leave to amend, the Navistar Defendants argue that leave should be denied as futile because even with the additional allegations, Plaintiff's fraud claims would be subject to dismissal under Rule 9(b) and Rule 12(b)(6). The Court agrees.

---

[46]*See Mednick v. Precor, Inc.*, 320 F.R.D. 140, 149 (N.D. Ill. 2017) (stating that to properly plead proximate cause under the ICFA, "at the very least Plaintiff must be able to plead that class members were exposed to Precor's allegedly deceptive advertising. One cannot be deceived by what one did not see, and this personal exposure to the alleged misrepresentation is crucial under Illinois law"); *Ciszewski*, 2010 WL 1418582, at *3 (holding that plaintiff failed to allege fraudulent omission under ICFA with required particularity where plaintiff "identified no communication he received that was generated by [the defendant]"); *De Bouse*, 922 N.E.2d at 316 ("A consumer cannot maintain an action under the Illinois Consumer Fraud Act when the plaintiff does not receive, directly or indirectly, communication or advertising from the defendant.").

[47]*Foman v. Davis*, 371 U.S. 178, 182 (1962).

[48]*Collins v. Wal-Mart, Inc.,* 245 F.R.D. 503, 507 (D. Kan. 2007) (citing *Ketchum v. Cruz,* 961 F.2d 916, 920 (10th Cir.1992); *Stewart v. Bd. of Comm'rs for Shawnee Cty*., 216 F.R.D. 662, 664 (D. Kan. 2003); *Lyle v. Commodity Credit Corp*., 898 F. Supp. 808, 810 (D. Kan. 2010)).

Ms. Shirey states in her affidavit that in August 2016, she accessed the website where Navistar, Inc. markets its trucks, and that the website "represented that Navistar's International truck line runs on a new type of modern engine that is different from the previous standard diesel engine in that the engine is more fuel efficient and has cleaner emissions. The website made no mention of the engines' defects."[49] As the Navistar Defendants point out, Ms. Shirey's affidavit does not indicate which model year or which particular engine this representation was referring to. Thus, even if the website did contain this representation in 2016, Plaintiff does not allege facts sufficient to show that it would have applied to the trucks at issue, which were manufactured in 2010 and 2011. According to Plaintiff's own allegations, the Navistar Defendants began retiring the MaxxForce engine in 2013, and by 2015, that engine was no longer used in International DuraStar 4300 trucks. In light of the foregoing, the Court finds Ms. Shirey's proposed additional allegations insufficiently specific to satisfy Rule 9(b).

Mr. Shirey states in his affidavit that in November 2016, after he had received an offer to purchase the trucks from Allstate but before he accepted that offer, he visited a Navistar used truck dealer in Kansas City, Missouri. Mr. Shirey attests that he spoke with a sales representative named "Doug" and informed him of the details of the offer Plaintiff had received from Allstate, including the make and model numbers of the trucks. When Mr. Shirey asked Doug what he thought about the offer, Doug assured him that it would be a "worthwhile purchase."[50] Mr. Shirey further attests that Doug said: "[t]hese should be good trucks for you guys," "[a] lot of people use them here around town," and "[l]ook around—we're number one

---

[49]Natasha Shirey Aff., Doc. 70-1 ¶¶ 4–5.
[50]Dan Shirey Aff., Doc. 70-2 ¶ 6.

for medium duty trucks."[51] Doug never informed Mr. Shirey of any defect with the trucks, and Plaintiff relied on his representations when deciding to purchase the trucks later that month.

"The actionable nature of a representation . . . is a question of law,"[52] and "[t]o be actionable, a false representation must relate to a past or present fact, as distinguished from an expression of opinion."[53] Here, the Court finds that the alleged overt statements by "Doug" do not support Plaintiff's fraudulent inducement claim. Rather, such "[s]ubjective claims about products, which cannot be proven either true or false, are not actionable; they are mere 'puffing.'"[54]

To the extent that Plaintiff seeks to amend to bolster its fraudulent concealment claim, such amendment would remain futile because Plaintiff's Amended Complaint would still lack facts sufficient to show that Plaintiff could not have discovered the alleged defective nature of the trucks through the exercise of reasonable diligence. Further, amendment in support of Plaintiff's fraudulent concealment claim would be futile because Plaintiff still fails to allege a contractual or fiduciary relationship sufficient to impose a duty of disclosure. The Court agrees that no such relationship exists here, even considering the additional facts Plaintiff seeks to add

---

[51] *Id.* ¶ 7.

[52] *ITT Indus. Credit Co. v. Kent Hotel Co. of Hays, Kan.*, Civ. A. No. 86-1053-T, 1989 WL 41633, at *8 (D. Kan. Mar. 20, 1989) (citing *Goff v. Am. Savings Assoc.*, 561 P.2d 897, 902 (Kan. Ct. App. 1977)).

[53] *Id.* (citing *Timi v. Prescott State Bank,* 553 P.2d 315, 325 (Kan. 1976); *Fisher v. Mr. Harold's Hair Lab*, Inc., 527 P.2d 1026, 1033 (Kan. 1974)).

[54] *Folkers v. Am. Massage Therapy Ass'n, Inc.*, No. Civ.A 03-2399-KHV, 2004 WL 306913, at *10 (D. Kan. Feb. 10, 2004) (quoting *Lipton v. Nature Co.,* 71 F.3d 464, 474 (2d Cir.1995)) (citing *Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch,* 292 F.Supp.2d 535, 552 (S.D.N.Y.2003)); *see also Intermountain Stroke Ctr., Inc. v. Intermountain Health Care, Inc*., 638 F. App'x 778, 787 (10th Cir. 2016) ("The hallmarks of puffery are 'broad, vague, and commendatory language,' as well as '[s]ubjective claims . . . which cannot be proven either true or false.'") (citations omitted)); *Timi,* 553 P.2d at 325 ("To constitute actionable fraud the representation must relate to past or present fact, as opposed to mere opinions or puffing or promised actions in the future."); *Ormsby v. Imhoff & Assoc., P.C.*, No. 14-2039-RDR, 2014 WL 4248264, at *6 (D. Kan. Aug. 27, 2014) (finding statements concerning skill possessed by attorneys to be puffery rather than actionable fraud); *VNA Plus, Inc. v. Apria Healthcare Grp., Inc.,* 29 F.Supp.2d 1253, 1265–66 (D.Kan.1998) ("Puffing of wares, sales propaganda, and other expressions of opinion are common, are permitted, and should be expected. Those in the marketplace should recognize and discount such representations when deciding whether to go through with a transaction.").

relating to in-person statements made by "Doug." The Navistar Defendants were not a party to the purchase transaction between Plaintiff and Allstate, and Plaintiff makes no argument to support the existence of a duty arising from a fiduciary relationship. Rather, Plaintiff contends that because the Navistar Defendants communicated directly with Plaintiff, they "had a duty to disclose the defects, or at the very least, not make material misrepresentations about the Trucks."[55]

Although "Kansas law . . . imposes a duty on defendants to correct any material misrepresentations, even if no duty exists at the relationship's inception,"[56] the Court does not find the alleged statements by Doug—which it has concluded were puffery—of the sort that would impose a duty to correct a misstatement.[57] And again, Plaintiff has failed to allege with particularity that Plaintiff's ignorance regarding the trucks' potential performance and reliability problems was not the result of its own lack of diligence. "[O]ne may not abandon all caution and responsibility for his own protection and unilaterally impose a fiduciary relationship on another

---

[55]Doc. 70 at 8.

[56]*Ala. Fabricating Co., Inc. v. Bedeschi Mid-West Conveyor Co., LLC*, Case No. 16-2740-DDC-TJJ, 2018 WL 2198638, at *17 (D. Kan. May 14, 2018) (citing *Great Plains Christian Radio, Inc. v. Cent. Tower, Inc.*, 399 F. Supp. 2d 1185, 1196 (D. Kan. 2005); *Kan. Waste Water, Inc. v. Alliant Techsystems, Inc.*, No. 02-2605-JWL, 2005 WL 1109456, at *18 (D. Kan. May 9, 2005)); *see Sparks v. Guaranty State Bank*, 319 P.2d 1062, 1066 (Kan. 1956).

[57]*See, e.g., Gonzales v. Assocs. Fin. Serv. Co. of Kan., Inc.*, 967 P.2d 312, 324–25 (Kan. 1998) (finding no duty to make further disclosures in absence of affirmative misrepresentations); *DuShane v. Union Nat'l Bank*, 576 P.2d 674, 764 (Kan. 1978) (distinguishing *Sparks*, in which "there was not only concealment with regard to a matter about which the bank had a duty to disclose information but also false statements about existing material fact"); *Ala. Fabricating Co., Inc.*, 2018 WL 2198638, at *17 (denying summary judgment on fraudulent omission claim in absence of relationship giving rise to duty to speak where defendant made material misrepresentations, and distinguishing cases where defendants made no "false representations that they failed to correct") (citations omitted); *Great Plains Christian Radio, Inc. v. Cent. Tower, Inc.*, 399 F. Supp. 2d 1185, 1196–97 (D. Kan. 2005) (finding defendant owed plaintiff duty of disclosure to prevent specific factual assertions from being misleading); *Kan. Waste Water, Inc. v. Alliant Techsystems, Inc.*, No. 02-2605-JWL, 2005 WL 1109456, at *18 (D. Kan. May 9, 2005) ("[I]n this case, it is the fact of [defendant's] affirmative representations . . . that give rise to a duty to disclose on plaintiffs' fraud by silence claim."); *Lorusso v. Boulder Brands, Inc.*, Civil Action No. 15-cv-00679-MSK-KMT, 2017 WL 4365180, at *13 (D. Colo. Mar. 1, 2017) ("Because the court has already determined the claims non-actionable puffery, the court need not decide whether the allegedly omitted facts altered the meaning of the statements.").

without a conscious assumption of such duties by the one sought to be held liable as a fiduciary. This is particularly true when . . . [the plaintiff] is fully competent and able to protect his own interests."[58]  The Court denies Plaintiff's request for leave to amend as futile.

**IT IS THEREFORE ORDERED BY THE COURT** that the Navistar Defendants' Motion to Dismiss (Doc. 55) is **granted**, and Counts II (fraudulent concealment), Count III (fraud in the inducement), and Count V (consumer fraud and deceptive trade practices under the Illinois Consumer Fraud and Deceptive Business Practices Act) of Plaintiff's Amended Complaint are dismissed.

**IT IS SO ORDERED.**

Dated: January 28, 2020

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[58]*Denison State Bank v. Madeira*, 640 P.2d 1235, 1243–44 (Kan. 1982).